# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| JAROSLAW WIELGUS, | |
| Plaintiff, | |
| v. | **Case No. 08 CV 1597** |
| RYOBI TECHNOLOGIES, INC., ONE WORLD TECHNOLOGIES, INC., and HOME DEPOT USA, Inc., | **Magistrate Judge Young B. Kim** |
| Defendants. | **August 4, 2010** |
| RYOBI TECHNOLOGIES, INC., ONE WORLD TECHNOLOGIES, INC., and HOME DEPOT USA, Inc., | |
| Third-Party Plaintiffs, | |
| v. | |
| JTD CONSTRUCTION, INC., | |
| Third-Party Defendant. | |

**MEMORANDUM OPINION and ORDER**

Before the court are the motions of defendants Ryobi Technologies, Inc., One World Technologies, Inc., and Home Depot USA, Inc., for sanctions [96] against third-party defendant JTD Construction, Inc. ("JTD") for failure to respond to their written discovery requests and to compel [98] JTD or Travelers Insurance Company ("Travelers") to produce documents requested in their third-party subpoena. Plaintiff in this case filed a product liability case, on March 19, 2008, against defendants alleging that the power saw he purchased in 2006 was unsafe as it lacked a flesh-detection safety feature and that the lack

of this safety feature caused him serious personal injury on March 26, 2006. Although the caption identifies Jaroslaw Wielgus ("Wielgus") as the party plaintiff, he is involved in this case in name only. Because Travelers compensated Wielgus in his workers' compensation claim against his employer JTD, Travelers now sues defendants under its subrogation rights. In defense of this action, defendants filed a third-party complaint against JTD. The defense of JTD in this action is also financed by its insurer, Travelers. For the following reasons, defendants' motion for sanctions [96], treated as a motion to compel, is granted and their motion to compel [98] is granted in part and denied in part:

**Procedural History and Background**

On December 5, 2008, defendants served a subpoena on Travelers for "[a]ny and all records relating to worker's compensation cause no. FZW2491, Jaroslaw Wielgus v. JTD Construction, Inc." The subpoena ordered Travelers to produce the records by December 22, 2008. (R. 98, Ex. A.) Travelers never responded to the subpoena. (R. 98.) Six months later–and more than a year ago–on May 13, 2009, defendants served JTD with their first set of interrogatories and requests to produce. (R. 96, Exs. A, B, C.) Pursuant to Federal Rules of Civil Procedure 33(b)(2) and 34(b)(2), JTD had until on or about June 12, 2009, to respond to the discovery requests. Through four extensions of the discovery completion deadline, JTD never responded to defendants' written discovery requests.

2

On November 3, 2009, defendants served Travelers with a more detailed subpoena requesting documents pertaining to Wielgus' workers' compensation claim against JTD. (R. 98, Ex. B.) In this subpoena, defendants requested the following:

> Please produce any and all records in your possession of any kind and nature pertaining to the individual referenced below including but not limited to the complete workers' compensation file, any and all prior and subsequent workers' compensation claims, all medical records, medical examination reports, medical bills, employment records and wage loss documentation, documentation reflecting any and all workers' compensation payments and/or settlements, vocational rehabilitation records, correspondence, workers' compensation petition(s), Form 45 accident reports, investigative notes and reports, witness statements, witness lists, photographs, videotapes, films, CD-roms, any and all other materials of any type relating to the individual referenced below and/or the subject claim.

(R. 98, Ex. B.) The subpoena required a response by November 17, 2009. Travelers did not respond to the subpoena. However, on December 4, 2009, JTD advised defendants that Travelers sent the responsive documents to JTD. (R. 98, Ex. C.) JTD further advised that it was withholding various categories of documents based on "attorney-client and/or attorney work product privileges." (Id.) Ten days later, on December 14, 2009, defendants asked JTD to provide them with a detailed privilege log. (R. 96, Ex. D.) JTD did not release any logs explaining the nature of the privilege it asserted.

On January 26, 2010, the court permitted JTD until February 16, 2010, to answer defendants' written discovery requests, which were still outstanding. According to the January 26, 2010, order, "JPM [sic] Construction is granted leave to respond to written discovery on or by 2/16/2010." (R. 87.) JTD ignored this order and again failed to respond

3

to the outstanding interrogatories and request to produce. On March 10, 2010, defendants again requested JTD to provide the long overdue responses to their written discovery and the privilege log they asked for back in December 2009 within 14 days. (R. 96, Ex. D.) JTD ignored this request as well.

Then on April 6, 2010, the court ordered JTD to either produce the documents responsive to the Travelers subpoena or to submit a privilege log to defendants by April 20, 2010. (R. 88.) JTD ignored this order and offered defendants nothing. Defendants tried again to secure JTD's compliance with the court order and requested the outstanding discovery answers, but to no avail. (R. 96, Ex. E.) On May 26, 2010, the parties appeared for a status hearing. When asked by the court why JTD failed to turnover the ordered privilege log, JTD did not have a response. JTD merely asked for another chance to produce its privilege log. The court granted the oral request and permitted JTD one more chance to produce a privilege log by June 11, 2010. (R. 92.) On June 9, 2010, JTD finally sent defendants its privilege log in response to the documents defendants asked for in its subpoena to Travelers. (R. 93.) However, JTD still has not answered defendants' interrogatories or requests to produce. (R. 96.)

**Analysis**

**I. Motion for Sanctions**

The motion is granted.[1] The court must treat defendants' motion for sanctions as a motion to compel under Federal Rule of Civil Procedure 37. On January 26, 2010, the court entered an order granting JTD additional time to respond to defendants' written discovery requests. (R. 87.) Although defendants' interpretation of the court's order of January 26, 2010, that the court *ordered* JTD to respond to the discovery requests by February 16, 2010, is reasonable, the court did not specifically *order* JTD to respond by February 16, 2010. As such, the court must treat defendants' motion for sanctions as a motion to compel JTD to respond to their written discovery requests.

The record amply demonstrates that JTD has failed to respond to defendants' written discovery requests and JTD has failed to show any cause for its failure to answer in a timely manner despite having had more than a year to formulate its response. Because JTD has failed to timely respond to defendants' interrogatories and request to produce, JTD must respond fully and completely to the interrogatories and request for production of documents by no later than August 20, 2010. JTD may not pose any objections to the interrogatories and requests for production of documents as those objections, if any, are considered to have been waived. *See Fed. R. Civ. P. 33(b)(4), 34(b)(2)(A); see also, Autotech Technologies Ltd.*

---

[1] The court permitted JTD until July 15, 2010, to file a response to the motion for sanctions (R. 100), but JTD did not file a response.

*Partnership v. Automationdirect.com, Inc.*, 236 F.R.D. 396, 398 n.2 (N.D. Ill. 2006)(objections to request for production of documents under Rule 34 are deemed waived unless timely made); *Lincoln Diagnostics, Inc. v. Panatrex, Inc.,* No. 07 CV 2077, 2008 WL 4330182, *3 (Sept. 16, 2008)(untimely objections to Rule 34 requests are deemed waived).

**II. Motion to Compel**

The motion is granted in part and denied in part.[2] JTD has withheld certain documents responsive to defendants' subpoena served on its insurer, Travelers, based on the attorney-client and attorney work-product privilege.[3] As a general matter, Federal Rule of Civil Procedure 26(b)(1) provides that a party may "obtain discovery regarding any matter, not privileged, that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons who know of any discoverable matter." Pursuant to Federal Rule of Civil Procedure 26(b)(5), when a party withholds information otherwise discoverable by claiming privilege, the party must then make the privilege claim and then disclose a privilege log contain the following information for each

---

[2] The court permitted JTD until July 15, 2010, to file a response to the motion compel (R. 100), but JTD did not file a response. Instead, on July 15, 2010, JTD filed a motion for in camera inspection of the disputed documents, which the court denied (R. 104.)

[3] The court presumes that the withheld responsive documents are relevant or that they may lead to relevant evidence as JTD's only reason for refusing to turn over the documents in question is that they are immune from disclosure. This decision does not pass any judgment on the admissibility or relevance of any of the identified documents.

document: (1) the date, the author and all recipients, along with their capacities; and (2) subject matter of the document, purpose for its production, and an explanation as to why the document is privileged or immune from discovery. The explanation must be sufficiently specific to allow the court to determine whether the claimed privilege or immunity is applicable.

The attorney-client privilege protects verbal and written communications exchanged in confidence between a client and an attorney for the purpose of obtaining legal advice. *See Upjohn Co. v. United States*, 449 U.S. 383, 394-99 (1981). In a diversity action, such as in this action, the applicability and scope of attorney-client privilege is governed by the law of the forum state. *Urban Outfitters, Inc. v. DPIC Companies, Inc.*, 203 F.R.D. 376, 378 (N.D.Ill.2001); *see also Fed. R. Evid. 501*. Illinois law governing attorney-client privilege is identical to federal law in that they both require the court to determine whether legal advice of any kind was sought from an attorney in his or her capacity as an attorney, whether the material sought in discovery contains communication related to the purpose of seeking such legal advice and whether such communication was made in confidence. *See id. and Sandra T.E. v. South Berwyn Sch. Dist. 100*, 600 F.3d 612, 618 (7th Cir. 2010).

The Supreme Court of Illinois has also extended the attorney-client privilege to communications between an insured and insurer where the insurer owes an obligation to defend the insured. *Pietro v. Marriot Senior Living Servs., Inc.*, 348 Ill.App.3d 541, 552 (Ill.App.Ct. 2004). The rationale for the extension of the privilege is that agents of insurers

7

serve as a communication conduit between an insured and the attorney to be retained by the insurer for the benefit of the insured and his or her defense. *People v. Ryan*, 30 Ill.2d 456, 461 (Ill. 1964)  In order to rely on this subset insurer-insured privilege under the broader attorney-client privilege, the party asserting the privilege must show the following: "(1) the identity of the insured; (2) the identity of the insurance carrier; (3) the duty to defend a lawsuit; and (4) that a communication was made between the insured and an agent of the insurer." *Id.*  Of course, in order for the privilege to attach, such communication must have remained confidential.

While the attorney-client privilege is governed by Illinois law in this case, the work-product doctrine is determined by federal law. *See Fed. R. Civ. P. 26(b)(3)*. Unlike the attorney-client privilege, work-product privilege protects documents prepared by attorneys in anticipation of litigation for the purpose of analyzing, evaluating and preparing a client's case. *See United States v. Smith*, 502 F.3d 680, 689 (7th Cir.2007).  As such, the court must determine whether the documents sought in discovery contains an attorney's thought processes and mental impressions in order to decide whether the work-product doctrine applies. *See Sandra T.E.*, 600 F.3d at 621-22.  However, the courts in the Northern District of Illinois have construed Rule 26(b)(3) to limit this protection to one who is a party (or a party's representative) to the litigation in which discovery is sought. *See Cook v. City of Chicago*, No. 06 CV 5930, 2010 WL 331737, *1 (Jan. 26, 2010).

Here, JTD has withheld the following documents[4] asserting both the attorney-client and attorney work-product privilege:

1. 150 pages of Travelers' Internal Claim Handlers' File Activity Notes from various workers' compensation claims handlers assigned to the claim throughout the years detailing file activity, investigation, and evaluations, dated March 27, 2006, to November 17, 2009;

2. Eight-page invoice from Boies, Schiller & Flexner, LLP, to Travelers claims handler for legal work regarding saw litigation dated September 25, 2008;

3. Nine-pages of Travelers' Internal Claim Handlers' File Activity Notes from various workers' compensation claims handlers assigned to the claim throughout the years detailing file activity, investigation, and evaluations, dated January 5, 2009 to November 10, 2009;

4. One-page letter from Diana Rohlfs ("Rohlfs"), Travelers Claim Representative, to JTD advising handling of workers' compensation claim of Jaroslaw Wielgus (plaintiff) dated March 29, 2006;

5. Two-page letter from Claims Representative Rohlfs to JTD requesting wage statement of plaintiff dated March 29, 2006;

6. Four-page Travelers' Internal Claim Handlers' File Activity Notes from various workers' compensation claims handlers assigned to the claim dated March 28, 2006;

7. Two-page letter from Claims Representative Rohlfs to Travelers Staff Counsel, Thomas P. Marnell & Associates, assigning workers' compensation claim representation dated April 3, 2006;

8. Seven-page letter from Karen Blandford ("Blandford"), Travelers National Workers' Compensation Recovery Center, to Sullivan & Sullivan, LLP referring claim for representation on workers' compensation subrogation issues dated June 20, 2006;

9. 12-page letter from Sullivan & Sullivan, LLP to Jennifer Wartlift ("Wartlift"), Travelers Subrogation Department, outlining recovery and litigation plan dated January 30, 2008;

---

[4] The descriptions of these documents have been derived from JTD's privilege log. (R. 93.)

10. Two-page Travelers Interoffice Memorandum from Jennifer Campbell ("Campbell"), Travelers Claim Legal Group, to Wartlift in subrogation concerning investigation and analysis dated August 16, 2007;

11. One-page Travelers Interoffice Memorandum from Timothy Costello to Kelly Gilfert ("Gilfert"), Claims Handler, Travelers Subrogation Department, authorizing payment of claim expenses, dated 9/3/09;

12. Six-page letter from Travelers Staff Counsel, Maisel & Associates to JTD and Julie Stubbe ("Stubbe"), Travelers Claims Handler, concerning representation of JTD, initial case analysis and litigation expense forecast dated January 26, 2009;

13. Nine-page letter from Travelers insured Janusz Dyczko to Zofia Liszcz at Travelers concerning attorney representation letters and initial case analysis and litigation expense forecast sent to insured by counsel dated January 26, 2009;

14. Six-page report from Chicagoland Investigative Services to Anita Burns, SIU Investigator at Travelers, concerning pre-litigation investigation dated February 7, 2007;

15. 16 pages of invoice from Esquire for depositions dated December 26, 2008, to July 16, 2009;

16. 12-page letter from Sullivan & Sullivan, LLP to Subrogation Claims Handler Gilfert outlining litigation costs recovery and litigation plan dated January 30, 2008;

17. Two-page internal Travelers claims handler memorandum from Subrogation Claims Handler Gilfert with claim file analysis notes dated June 28, 2008;

18. Two-page letter from Kelly Sidebottom ("Sidebottom"), Claim Analyst, Travelers' Workers' Compensation Unit, to Travelers Staff Counsel Maisel & Associates regarding representation dated December 18, 2008;

19. One-page letter from Staff Counsel, Jeff Goldberg ("Staff Counsel Goldberg") of Holecek & Associates to Sara McDonald ("McDonald"), Travelers Workers' Compensation Claim Handler, regarding status of workers' compensation case dated May 2, 2007;

20. One-page letter from Staff Counsel Goldberg to Claims Handler McDonald regarding status of workers' compensation case dated May 30, 2007;

21. One-page letter from Staff Counsel Goldberg to Claims Handler McDonald regarding status of workers' compensation case dated July 3, 2007;

22. Three-page Travelers claims handler's notes concerning evaluation of workers' compensation claim dated December 22, 2008;

23. 195 pages of Travelers' Internal Claim Handlers' File Activity Notes from various workers' compensation claims handlers assigned to the claim throughout the years detailing file activity, investigation, discussions with counsel, and evaluations, dated March 27, 2006, to December 19, 2008;

24. Two-page Travelers' Internal Claim Handlers' Claim Report from unidentified author dated December 22, 2008;

25. Three-page Travelers' Internal Claim Handlers' Workers' Compensation Assignment Report from Case manager KS to Supervisor BLM dated December 28, 2008; and

26. One-page Internal Staff Counsel investigation report regarding workers' compensation claim search dated December 23, 2008.

JTD has also withheld the following documents based on the attorney-client privilege only:

27. Three-page Travelers' Interoffice Memorandum from Claims Analyst Sidebottom to set up new claim dated December 18, 2008;

28. One-page letter from Claims Analyst Sidebottom to Maisel & Associates regarding workers' compensation representation dated November 17, 2009;

29. One-page letter from Susan Ingalls ("Ingalls"), Claim Analyst, Travelers' Workers' Compensation Unit to insured JTD dated January 7, 2009, to acknowledge pending workers' compensation claim;

30. Two-page letter from Claim Analyst Ingalls to JTD dated January 7, 2009, to confirm acknowledgment of workers' compensation claim;

31. Six-page letter to Subrogation Claims Handler Gilfert from Sullivan & Sullivan, LLP dated August 7, 2009 with billing and expenses statement;

32. Two-page letter to Subrogation Claims Handler Gilfert from Sullivan & Sullivan, LLP dated August 14, 2009, detailing billing and expenses;

33. Three-page letter from Claims Representative Rohlfs to JTD acknowledging compensable workers' compensation claim dated April 3, 2006;

34. One-page letter from Blandford, Travelers National Workers' Compensation Recovery Center, to JTD concerning reimbursement of benefits dated May 3, 2006;

35. One-page letter from Blandford to JTD requesting contracts dated May 9, 2006;

36. Seven-page letter from Blandford to Sullivan & Sullivan, LLP referring claim for representation on workers' compensation subrogation issues dated June 30, 2006; and

37. One-page letter from insured Janusz Dyczko ("Dyczko") to Claims Representative Rohlfs of Travelers regarding employment of plaintiff dated May 1, 2006.

Because JTD withheld documents responsive to a properly served subpoena on its insurer, JTD had the burden of asserting that the documents are subject to protection under the attorney-client and work-product privilege and to describe the nature of the documents and communication contained therein in order to permit the court to make a reasonable assessment of the privilege's applicability. Applying the relevant and applicable laws to the documents withheld by JTD, the motion to compel is denied as to document numbers 7-9, 12, 13, 16, 18-21, 28 and 36. However, the motion to compel is granted as to document numbers 1-6, 10-15, 17, 22-27, 29-35 and 37 and JTD is ordered to turn them over to defendants by August 20, 2010.

The court must point out that JTD did not file a response objecting to defendants' motion to compel and did not provide any more detailed information about the documents JTD is withholding. JTD's filing of a motion to have the court review the hundreds of pages of documents and to have the court determine on its own whether a particular document is

protected from disclosure places the litigation burden on the court and undermines the purpose of Federal Rule of Civil Procedure 26(b)(5)(A). In order to give effect to Rule 26(b)(5)(A), the court must rule on defendants' motion to compel based on the information contained in JTD's privilege log dated June 9, 2010.

A review of this privilege log shows that the 37 categories of documents identified as responsive documents in the log can be sorted into six broader categories of documents: (1) documents generated by various Travelers' claims adjusters pertaining to the processing of Wielgus' workers' compensation claim against JTD; (2) documents containing communication between various Travelers' claims adjusters and its insured JTD; (3) internal documents containing communication among Travelers' employees regarding the workers' compensation claim and subrogation rights; (4) documents containing communication between Travelers' claims adjusters and the attorneys retained by Travelers for the workers' compensation litigation; (5) documents containing communication between Travelers' claims adjusters and non-attorneys retained by Travelers for the case at bar; and (6) documents containing communication between Travelers' claims adjusters and the attorneys retained by Travelers for the case at bar.

As to the first category of documents (## 1, 3, 6, 22 and 23), while JTD asserts both the attorney-client and work-product privileges as to these documents, neither of these privileges attaches to these documents. First, the privilege log does not offer any information about the various Travelers' claims adjusters who prepared these notes and whether any of

13

the notes contain communication related to the purpose of seeking legal advice and whether such communication was made in confidence. Second, the work-product privilege is not applicable to these documents because the privilege log does not detail that any of the notes in this category were prepared by an attorney in anticipation of litigation. Therefore, there is nothing to suggest that an attorney's thought processes or mental impressions pertaining to the litigation in this case are contained in these notes.

As to the second category of documents (## 4, 5, 12, 13, 29, 30, 33-35 and 37), the attorney-client privilege (including the insured-insurer privilege) protects documents ## 12 and 13. As detailed by the privilege log, document # 12 is a six-page letter from Maisel & Associates ("Maisel"), Travelers' Staff Counsel, to JTD and Stubbe, a claims handler, concerning JTD's representation, including the initial case analysis and litigation expense forecast. Document # 13 is a nine-page letter sent from JTD to Travelers concerning the same subject matters. The description of the documents raises an inference that these documents contain communication made for the purpose of seeking and providing confidential legal advice.

However, the attorney-client privilege does not attach to documents ## 4, 5, 29, 30, 33-35 and 37, because the privilege log does not offer any information to support an inference that these documents contain confidential communication. Furthermore, the work-product privilege does not attach to documents ## 4 and 5 because these documents consist of two letters Rohlfs sent to JTD advising JTD about Wielgus' workers' compensation claim

and requesting Wielgus' wage statement and do not show that an attorney prepared these documents or that they contain an attorney's thought processes or mental impressions prepared in anticipation of litigation.

As to the third category of documents (## 10, 11, 17, 24-27), the attorney-client privilege does not apply. The privilege log does not offer any information that the various Travelers' agents identified in the log, including Campbell, Wartlift, Costello, Gilfert, Sidebottom, a manager referred to as "KS" and a supervisor referred to as "BLM" are attorneys or that they were acting in their capacity as attorneys. Also, the privilege log does not contain any information that these internal documents contain confidential legal advice or confidential information communicated to an attorney for the purpose of seeking legal advice. Also, the work-product privilege does not attach to documents ## 10, 11, 17, and 24-26 because the privilege log does not detail that these internal communications and reports constitute documents prepared by an attorney in anticipation of litigation reflecting their thought processes or mental impressions.

As to the fourth category of documents (## 7, 19-21), letters to and from Travelers to its attorneys on the workers' compensation case, the attorney-client privilege protects these documents from production. The privilege log details that the communications involve four letters sent between JTD's insurer, Travelers, and Travelers' attorneys, including Thomas P. Marnell & Associates ("Marnell") and Staff Counsel Goldberg. These four letters can be

15

viewed as those which constitute confidential communications between JTD (through its insurer) and its attorneys for the purpose of seeking and providing legal advice.

As to the fifth category of documents (## 14 and 15), neither the attorney-client nor the work-product privilege attaches to these documents. The privilege log does not offer any information to demonstrate that either the author of the Chicago Investigative Services report or Anita Burns is an attorney or that either of them were acting in their capacity as an attorney. Also, an invoice from a court reporting service for fees related to depositions can hardly be considered privileged.

As to the last category of documents (## 2, 8, 9, 16, 18, 28, 31, 32 and 36), the attorney-client privilege attaches to documents ## 8, 9, 16, 18, 28 and 36, but does not attach to documents ## 2, 31 or 32. The attorney-client privilege is applicable to documents ## 8, 9, 16, 18, 28 and 36 because the privilege log details that these communications were sent between JTD's insurer and its attorneys Maisel and Sullivan & Sullivan, LLP ("Sullivan") for purposes of seeking and providing legal advice. For example, document # 9 is a 12-page letter from an attorney to JTD's insurer outlining the litigation cost and litigation plan in this case.

However, the attorney-client privilege does not attach to documents ## 2, 31, and 32, because these are invoices from attorneys to JTD's insurer for legal work performed and the log does not contain any information to support an inference they contain confidential communications. The work-product privilege also does not attach to document # 2 because

16

the privilege log does not offer any information that this invoice contains the thought processes or mental impressions of JTD's attorneys.

## Conclusion

For the foregoing reasons, defendants' motion for sanctions [96] is granted and defendants' motion to compel [98] is granted in part and denied in part. JTD is ordered to respond fully and completely to defendants' interrogatories and requests for production of documents and turn over a copy of documents ## 1-6, 10-15, 17, 22-27, 29-35 and 37 to defendants by August 20, 2010.

**ENTER:**

_____
**Young B. Kim**
**United States Magistrate Judge**