**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| JAROSLAW WIELGUS, | ) | |
| | ) | |
| Plaintiff, | ) | No. 08 cv 1597 |
| | ) | |
| vs. | ) | |
| | ) | |
| RYOBI TECHNOLOGIES, INC., ONE | ) | |
| WORLD TECHNOLOGIES, INC. and | ) | Magistrate Judge Kim |
| HOME DEPOT U.S.A., INC., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MOTION *IN LIMINE* NO. 1**

Defendants, Ryobi Technologies, Inc., One World Technologies, Inc. and Home Depot U.S.A., Inc., by and through their attorneys, Johnson & Bell, Ltd., prior to the impaneling of the jury, respectfully move this Court for the entry of an order *in limine* prohibiting plaintiff, plaintiff's counsel, and/or plaintiff's witnesses, including plaintiff's expert witnesses, from eliciting testimony concerning, relying on the documents, introducing any evidence, alluding to, and/or making any argument in the presence of the jury regarding the following:

> **Any evidence concerning or derived from the National Electronic Injury Surveillance System's and Consumer Product Safety Commission's accident data and reports.**

**FACTUAL BACKGROUND**

This is a product liability action involving Ryobi 10-inch BTS10 portable table saw ("BTS10"). Plaintiff alleges that the BTS10 was defective in its original design because it did not incorporate an adequate guarding system and a "flesh sensing technology," such as SawStop technology. Plaintiff intends to offer into evidence that, according to the Consumer Product Safety Commission ("CPSC") there are more than 34,000 table saw accidents every year. The evidence is sought to be offered through the testimony of the plaintiff's expert witnesses, Stephen Gass and Darry Holt and through the introduction of various documents, for the purpose

of showing that Defendants One World Technologies, Inc. and Ryobi Technologies, Inc. (collectively "One World") purportedly knew or should have known of the severity of the hazard to users of the BTS10, that the subject saw was defectively designed and/or that there is causal relationship between a known defect in the BTS10 and plaintiff's injury.

The underlying accident data upon which the CPCS has estimated (through extrapolation) the frequency of accidents involving various injuries sustained by individuals using different types of table saws was compiled by the National Electronic Injury Surveillance System ("NEISS"). NEISS is a system that records emergency room visits for injuries that are associated with consumer products. *See generally* http://www.cpsc.gov/library/neiss.html. The level of extrapolation is significant: NEISS data estimates over 34,000 table-saw related injuries[1] based on only 795 actual injuries reported to the sample set of emergency rooms in 2007.[2] The data collection process begins when a patient in the emergency room of one of the 100 sampled hospitals relates to a clerk, nurse or physician how that person's injury purportedly occurred. The patient's information with only terse description of the accident[3] is then entered into the medical record, and at the end of each day, a member of the hospital staff unilaterally determines which new cases are associated with which consumer products based on the brief description of the incident.[4] In many cases, the accidents are facially irrelevant as they do not even involve blade contact, therefore, would not have been prevented or lessened by a different guarding system or a flesh technology. **Exhibit 3**, (CPSC Case No. 70546080, p.20, "patient dropped table saw on

---

[1] It's important to note that NEISS data and estimates are based on injuries treated in hospital emergency rooms that patients say are *related* to certain products. This does not mean that an injury was *caused* by a particular consumer product. *See CPSC Document#3002,* **Exhibit 1**, pages 3 of 5 attached, ("Surveillance data enable CPSC analysts to make timely national estimates of the number of injuries associated with (but not necessarily caused by) specific consumer products.")
[2] http://www.scps.gov/library/neiss.html (reporting the NEISS National Injury Estimate for table saws as 34,833 based on 795 total injuries for a time frame of 01/01/07 through 12/31/07). Because NEISS estimates are based on small sample of hospital emergency rooms rather than a census of all hospital emergency rooms, the estimate has an associated, and recognized, degree of error that reflects the uncertainty due to sampling. **Exhibits 2 and 2a**.
[3] *See NEISS Table Saw Accident Data for 2007-2008,* **Exhibit 3**, (CPSC Case No. 70846475, p.16, "patient cut thumb on saw"; CPSC Case No. 70802129, p.9, "73 year old injured arm on table saw"); CPSC Case No. 70423316, p.8, "finger cut on table saw at home"; CPSC Case No. 70402871, p.2, "injured using table saw." These brief descriptions make it impossible to determine which of these other accidents is similar to plaintiff's incident.
[4] For example, the code for incidents involving "bench or table saws" is 841. **Exhibit 3**.

#2913800

2

lower leg").[5] Apparent limitations of the NEISS data and its statistical conclusions should not be allowed into evidence, especially not for plaintiff's intended application in this case to demonstrate notice, negligence, defect, causation, and/or as the basis for his experts' opinions.

## ARGUMENT

### I. The NEISS/CPSC Data and Reports Are Inadmissible Hearsay.

The NEISS database contains multiple layers of out-of-court statements that plaintiff intends on offering at trial in documentary or opinion form to prove the truth of the matter asserted: those other accidents, in fact, happened as reported. Furthermore, despite the fact that such evidence consists of subjective accounts regarding how an accident occurred, the plaintiff intends to offer it without providing any first-hand testimony regarding any of the other accidents.

There is no doubt here that the NEISS database contains several layers of out-of-court statements concerning events that happened outside of trial. Fed. R. Evid. 801(c). Specifically, the NEISS data was first gathered from injured patients by a hospital employee, who then recorded this information in the medical record, creating a second layer of hearsay. Another member of the hospital staff then unilaterally determined, based on the medical record, which cases from the day should be reported in the NEISS database and did so by assigning a product code to the accident with a brief narrative, thereby creating a third layer of hearsay. The actual documentary NEISS account is the fourth layer of hearsay, and this is what is used by the CPSC to create the statistical conclusions plaintiff intends to offer at trial.

Plaintiff's attempts to seek admission of the NEISS other accidents as either business records under Fed. R .Evid. 803(6) or public records under Fed.R.Evid. 803(8) should also fail under Fed. R. Evid. 805, which requires that hearsay within hearsay evidence be admitted only if

---

[5] *See also*, **Exhibit 3**, (CPSC Case No. 71035692, p.42, "patient contused head/right hip when table saw slid off workbench striking him"; CPSC Case No. 70141774, p.43, "patient was moving table saw when struck himself in the left leg with leg of table saw and sustained a laceration to leg"; CPSC Case No. 70801036, p.4, "patient was at home, fell and his table saw causing contusion to left ribs").

#2913800 3

there is an exception to each "layer" of hearsay. The only way to overcome the hearsay nature of this other accident evidence is for the plaintiff to present testimony from the injured party in those other cases to explain what occurred. As the Seventh Circuit noted, "justice requires that the testimony of witnesses be given in open court, under oath and subject to cross-examination." *Tulloss v. Near N. Montessori Sch.,* 776 F.2d 150, 154 (7th Cir. 1985); *See also Stolarczyk v. Senator Int'l Freight Forwarding,* 376 F. Supp. 2d 834, 839 (N.D. Ill. 2005), citing *Budden v. United States,* 748 F. Supp. 1374, 1377-78 (D. Neb. 1990) (stating that "evidence reported in a government document is only admissible to the extent that the maker of the document could testify to that evidence were he or she present in court," and accordingly "disregarding" "the reported statements" of numerous witnesses). Permitting NEISS evidence would be tantamount to allowing the persons making statements in those other cases (injured patients to medical providers then to CPSC investigators) to testify against One World without being subject to cross-examination and without being required to take an oath. The Seventh Circuit's admonition to exclude the hearsay evidence at trial must be followed by this Court, especially, when the plaintiff here conducted no first-hand knowledge discovery into the NEISS accidents and is clearly not intending to offer in-court testimony regarding those incidents.

Moreover, courts that have addressed the admissibility of this very same type of evidence have consistently refused to allow the hearsay evidence contained in otherwise admissible business or public records, on the grounds that the information is untrustworthy under the Rules. For example, *McKinnon v. Skil Corp.,* 638 F.2d 270, 278-80 (1st Cir. 1981)*,* the manufacturer of a portable circular saw was sued for plaintiff's injuries which occurred while he was operating one of the manufacturer's saws. The plaintiff sought to introduce CPSC reports "to show [the manufacturer's] knowledge of similar prior accidents, to establish evidence of the existence of the blade guard defect, causation, and negligent design." *Id.* at 278. The appellate court agreed with the district judge that the CPSC reports constituted inadmissible hearsay and even if the

#2913800                                                                                                                                              4

CPSC reports could fit within the exception to the hearsay rule for public agency reports (Fed. R. Evid. 803(8)), a further examination of the CPSC reports revealed that they were "untrustworthy because they contain double hearsay … the CPSC investigator at one level, and the accident victim interviewee at yet another level." *Id.* As the appellate court recognized, "[m]ost of the data contained in the reports is simply a paraphrasing of versions of accidents given by the victims themselves who surely cannot be regarded as disinterested observers." *Id.* Notably, unlike in *McKinnon*, where the appellate court was examining the CPSC reports based on actual injuries, here, the plaintiff will seek to introduce statistical "evidence" of the number of annual accidents extrapolated from the limited hearsay evidence in the CPSC/NEISS data – a far more speculative proffer.

In *Kloepfer v. Honda Motor Co., Ltd.,* 898 F.2d 1452 (10th Cir. 1990), the court held that the trial court correctly excluded CPSC reports, despite plaintiffs' assertion that Fed. R. Evid. 803(8) contains a strong presumption of admissibility of governmental documents. *Id.* at 1458. At trial, plaintiffs attempted to introduce CPSC documents concerning ATV accidents, injuries and statistics. *Id.* at 1458. The Tenth Circuit upheld the trial court's exclusion finding as the evidence did not meet the "trustworthy" standards. *Id.* In particular, the court highlighted that, like here, the evidence was not limited to the specific type of product at issue (i.e. make, model, and year of ATV), and the data was not even limited to the specific manufacturer at issue. *Id.*

Thus, the core problem with introducing the NIESS accident data is its unreliability. Not only are there multiple layers of hearsay, but also each layer has its own reliability problems. Furthermore, in the majority of instances, there is no follow up investigation by the CPSC to verify the information. This is significant because it can be proven with absolute certainty that some "table saw accidents" were incorrectly recorded in the NEISS database. **Exhibit 3**, (CPSC Case No. 70440072, p.20, "patient cut index finger on scroll saw"; CPSC Case No. 70541734, p.45, "patient lacerated finger on "power saw"; *see also* footnote 10, *infra*. These reliability

#2913800                                                                                                                      5

issues are compounded by the fact that such a small number of reported accidents (795 in 2007 from only 2% of the eligible hospitals) were used to determine the total national estimate (34,833 in 2007). The magnitude of the extrapolation is enormous. This type of statistical guess work does not pass master under the harsh light of the Rules of evidence and is certainly not what the courts have permitted into evidence under any circumstances.

## II.     The NEISS/CPSC Data and Reports Are Irrelevant.

The admission of evidence regarding the presence of other accidents is grounded, first and foremost, in the rule of relevance, and its collateral concept of refusing to admission of relevant evidence when the interest of justice requires. Fed. R. Evid. 401 and 402. (Irrelevant information is not admissible).

The touchstone for the admission of evidence of other accidents is "substantial similarity" between the product involved in the case at trial and other same or substantially similar products manufactured by the defendant. "[T]he proponent must show that the other accidents occurred under substantially similar circumstances." *Nachstheim v. Beach Aircraft Corp.,* 847 F.2d 1261, 1268 (7th Cir. 1988), citing *Borden, Inc. v. Florida E.C.R.Co.,* 772 F.2d 750, 755 (11th Cir. 1985) ("'Whether a *reasonable inference* may be drawn as to the harmful tendency or capacity of [a product] from prior failures depends upon whether the conditions operating to produce the prior failures were *substantially similar* to the occurrence in question.'") (quoting Jones & Laughlin Steel Corp. v. Matherne*,* 348 F.2d 394, 400 (5th Cir. 1965) (emphasis added)). Furthermore, "[t]he foundational requirement that the proponent of similar accidents evidence must establish substantial similarity before the evidence will be admitted is especially important in cases such as this where the evidence is proffered to show the existence of a dangerous condition or causation." *Nachstheim,* 847 F.2d at 1268-69; *Cooper v. Firestone, Co.,* 945 F.2d 1103, 1105 (9th Cir. 1991) ("a showing of substantial similarity is required when a plaintiff

attempts to introduce evidence of other accidents as direct proof of negligence, a design defect, or notice of the defect.")

First, despite the fact that the NEISS data is devoid of sufficient information for plaintiff to demonstrate that the other accidents occurred under substantially similar circumstances and/or involved substantially similar products, plaintiff here did not conduct any discovery into the "other accidents" reported in the NEISS database. Absent this showing by the plaintiff, the evidence of other accidents is irrelevant. For example, *inter alia,* it does not indicate: (1) the manufacturer and model of the saw involved in any given accident; (2) the age or condition of the saw; (3) the experience level of the user; (4) the cut being performed at the time of the accident; (4) the specific type of injury; (5) the circumstances of each accident and in particular, whether, there was a "kickback"; (6) whether the safety guard was in use; or (7) whether the saw had been improperly altered or damaged. In fact, the NEISS data contain terse and unverified summaries of hearsay accounts regarding the accidents, which are clearly insufficient to meet the heightened standard of substantial similarity required here. Oftentimes, these general accounts relate nothing more than a patient was injured using a table saw. **Exhibit 3**, (CPSC Case No. 70802129, p.9, "73 year old injured arm on table saw"; CPSC Case No. 71107780, p. 35, "79 year old using table saw injured finger"; CPSC Case No. 71040017, p.23, "patient was at home using table saw, lacerated right forearm"; CPSC Case No.71213063, p.24, "patient sustained a laceration of a finger from table saw at home"; CPSC Case No. 80106043, p.36, "lacerated finger on table saw"; CPSC Case No. 70828376, p.4, "patient cut left arm while using a table saw"; CPSC Case No. 70717646, p.27, "patient cut left thumb with table saw at home"). In this case, the plaintiff cannot establish that any, much less all, of the accidents upon which the NEISS/CPSC data and reports are based are substantially similar to Mr. Wielgus' accident or that none of the other accidents resulted from the user's own negligence.

Second, the NEISS accident data on table saws is not limited to specific table saw manufacturers, and the plaintiff cannot show that Ryobi BTS10 or substantially similar table saw, let alone the specific model of Ryobi BTS10 at issue here, was involved in all, if any, of these other accidents. Therefore, if the Court were to permit into evidence this accident data published by the CPSC, the Court would not only be allowing evidence of other accidents not shown to be substantially similar, but also data on accidents including other manufacturers' products. *Kloepfer,* 898 F.2d at 1458 (excluding CPSC accident data that was not limited to the specific incident, type of product and manufacturer at issue).

Third, information available in the NEISS database reveals that many of the other accidents did not even involve a blade contact injury at all, and, therefore, did not occur under substantially similar circumstances to the accident at issue here and have no probative value in this case. For example, some injuries involve a user being struck with a work piece while operating a table saw. **Exhibit 3**, (CPSC Case No. 80116582, p.18, "at home using table saw, piece of metal fell into saw, and pieces broke off and stuck patient in the fact"; CPSC Case No. 70319803, p.19, "patient was hit in head by a 2 by 4 that was kicked out of a table saw"; CPSC Case No.70331154, p.19, "nasal fracture with laceration. Patient was using a table saw and a board flew up and hit patient in face"; CPSC Case No. 80103189, p. 42, "wood kicked back and hit patient's right wrist causing a contusion"; CPSC Case No. 70332352, p. 2, "patient was using a table saw at home when a piece of wood flew off, striking him in the hand"; CPSC Case No. 70655278, p.15, "patient using a table saw – wood flew up hitting patient in face").[6] Other

---

[6] *See also* **Exhibit 3**, ( CPSC Case No.70147125, p.25, "57 year old make using table saw when piece of wood flew up and struck him in lip"; CPSC Case No.71140237, p. 48, "patient trimming wood with table saw and piece of wood hit patient in stomach causing contusion to abdomen"; CPSC Case No.71040087, p. 11, "patient had piece of wood kick back from a table saw – striking patient in the ribs"; CPSC Case No.71119171, p.24, "patient cutting wood with a table saw, piece of wood shot up and cut his face"; CPSC Case No.70900938, p.5, "patient struck by wood from table saw"; CPSC Case No.80103042, p. 42, "54 year old make injured when wood hit finger cutting through the nail"; CPSC Case No.71034358, p.23, "patient with laceration to elbow when wood flew off table saw into elbow"; CPSC Case No.70328001, p.7, "struck on the finger when board kicked back from the saw"; CPSC Case No.71155531, p.29, "patient injured by wood that kicked back and hit abdomen"; CPSC Case No.71104514, p.35, "board kicked back while using table saw. Left wrist sprain"; CPSC Case No.70650621, p.15, "table saw

reported injuries are as common as a user receiving a splinter from the work piece while operating the saw, **Exhibit 3**, (CPSC Case No.70619144, p. 33, "patient using a table saw and splinter in right hand"; CPSC Case No.71050300, p. 29, "wood splinter in thumb from table saw")[7] or receiving an eye injury from dust or some other object while operating a table saw. **Exhibit 3**, CPSC Case No.70314274, p. 37, "39 year old make with abrasion to right eye from foreign body in eye when using table saw"; CPSC Case No.70947910, p. 34, "using table saw, wood chip got into eye"; CPSC Case No.70539239, p. 20, "corneal abrasion when suing table saw and saw dust got in eye").[8] In fact, there are some NEISS "table saw injuries" that have nothing to do with the actual operation of a table saw at all, and are only "table saw injuries" because a patient happened to fall into, or over, a table saw, **Exhibit 3**, CPSC Case No.71138838, p. 17, "patient ran into handle of table saw has laceration to tongue and possible loose teeth"; CPSC Case No.70617991, p. 27, "patient tripped over workmate table saw bench –

---

kicked up board and it hit patient in face"; CPSC Case No.71141884, p.12, "patient was hit by a flying 2 by 4 he was cutting on a table saw"; CPSC Case No.70454765, p.39, "patient hit with 2 by 4 board that flew out of table saw"; CPSC Case No.71215045, p.36, "finger laceration – wood hit finger at home"; CPSC Case No.70613978, p.15, "using table saw at home – wood hit abdomen"; CPSC Case No.71154292, p. 42, "patient was at wood shot at school when a piece of wood was kicked backwards out of table saw and hit him in abdomen"; CPSC Case No.70941518, p. 22, "cutting wood with table saw at home, saw threw back piece of wood injuring thumb"; CPSC Case No.70846469, p.4, "table saw kicked back board and hit hand at home"; CPSC Case No.70409028, p. 44, "laceration to arm when using a table saw and the wood bounced back and hit him"; CPSC Case No.70129388, p. 43, "cutting wood with a table saw – got hit by wood that kicked back"; CPSC Case No.070126HEP9012, #5, "victim is a 57 year old male who was using a table saw for about 35 minutes and was near the end of a cut when stock kicked back and hit him in the lip"; CPSC Case No.070131HEP9067, #9, "victim is a 60 year old male who was using a table saw to cut wood. Victim was towards the end of a cut when stick kicked back and cut his left index finger"; CPSC Case No.070201HEP9064, #38, "Victim had been cutting on and off for about 4-5 hours. Victim was into a cut when the wood kicked back and he fractured 2 fingers on his right hand"; CPSC Case No.070207HEP0961, #. 42, "Victim had been cutting for about 30 minutes and was near the end of a cut when the stock kicked back and the wood hit his left thumb"; CPSC Case No.H0760067A, p. 163, "A man, age 71, was pushing a wood through a table saw when the plastic shield that wood rode on broke. The wood went down into the saw, shot back out and hit the man in this stomach"; CPSC Case No.I0770067A, p. 164, "The plastic supports on the wings on a table saw snapped and caused the wood to kick blade guard up and the board a 49 year old man was cutting to kick back out at him and injured him in his wrist").

[7] *See also* **Exhibit 3**, (CPSC Case No.71012705, p. 17, "patient using tale saw at home had foreign body in back of left hand"; CPSC Case No.70633765, p. 33, "using table saw to cut branches and small splinter branch went into hand").

[8] *See also* **Exhibit 3**, (CPSC Case No.71230790, p. 49, "foreign body in eye – 40 year old make presents with sawdust particles in eye – had been using a table saw"; CPSC Case No.70840223, p. 16, "blunt trauma to the eye caused by vinyl siding from table saw"; CPSC Case No.71205460, p. 30, "corneal abrasion – debris while using table saw to cut wood at home"; CPSC Case No.70135315, p. 13, "left corneal abrasion. Patient was using a table saw and something flew in eye"; CPSC Case No.70847160, p. 4, "eye stinging since Monday. Patient using a table saw prior to onset of symptoms"; CPSC Case No.70539239, p. 20, "corneal abrasion when using table saw and sawdust got in eye").

left wrist fracture"[9] or tried to lift a table saw. **Exhibit 3**, CPSC Case No.70947572, p. 29. "72 year old male injured neck while moving table saw at home"). Finally, in some instances, the table saw product code was mistakenly entered for an injury involving either a different or unspecified power tool. **Exhibit 3**, CPSC Case No.70440072, p. 20, "patient cut left index finger on scroll saw"; CPSC Case No.70832414, p. 16, "40 year old injured finger on miter saw"; CPSC Case No.70541734, p. 45, "patient lacerated fingers on 'power saw'").[10]

As a result, the reasons for the exclusion of the NEISS accident data and the CPSC reports derived from that data are clear here. A jury should focus on determining whether BTS10 is defective and whether any such defect actually caused plaintiff's injury. This determination should be based on the relevant evidence at trial, rather than the fact that a product was involved in other accidents. Plaintiff here cannot show that the "other accidents" in the NEISS database occurred under substantially similar circumstance as plaintiff did not conduct any discovery into the accidents to assist him in this analysis. In fact, the limited information that is available regarding these other accidents highlights that a great number of them did not even involve blade contact and did not occur under remotely substantially similar circumstances. Moreover, accidents, injuries and statistics involving all different types of saws manufactured by various of manufacturers is completely irrelevant and should be excluded at this trial.

### III. The NEISS/CPSC Data and Reports Are Highly Prejudicial.

Even if the NEISS other accidents evidence was somehow found relevant, and its numerous levels of unreliable hearsay overlooked, such evidence should still be excluded on the

---

[9] *See also* **Exhibit 3**, (CPSC Case No.71035692, p. 41, "patient contused head when table saw slipped off work bench striking him"; CPSC Case No.70141774, p. 43, "patient was moving table saw when he struck himself in the left leg with leg of table saw"; CPSC Case No.71203054, p. 48, "patient hit hand on table saw").

[10] *See also* **Exhibit 3**, (CPSC Case No.71064357, p. 23, "patient sustained laceration to hand on 'electric saw'"; CPSC Case No.71146025, p. 30, "patient using band saw and amputated fingers"; CPSC Case No.71057408, p. 23, "patient lacerated thumb on a 'circular saw'"; CPSC Case No.70556662, p. 14, "patient lacerated finger using a band saw"; CPSC Case No.70927082, p. 28, "lacerated knee on a band saw"; CPSC Case No.70138682, p. 7, "patient sustained laceration to left hand on a chop saw"; CPSC Case No.70404683, p. 2, "using a 'power saw' when it flipped back and deeply lacerated hand").

ground of undue prejudice, confusion of the issues, potential to mislead the jury and waste of judicial time on collateral issues. F. R. Evid. 403.

Plaintiff intends to introduce the CPSC statistical conclusions derived from the NEISS data to show that there are indeed thousands of accidents in the United States each year involving table saws, and that as a result the BTS10 is defective in its original design. Thus, by allowing the jury to hear that there were other accidents involving tables saws, One World would be overwhelmingly prejudiced is defending against claims of product defect in this case. The Seventh Circuit has recognized that to burden the jury with hearsay accident reports can cause untold juror confusion and possible prejudice. *See Weir v. Crown Equipment Corp.,* 217 F.3d 453 (7th Cir. 2000) ("[t]o have dumped all of these hearsay accident reports (1,000) about various brake problems on the jury would have caused untold juror confusion and possible prejudice."); *Gardner v. Southern Ry. Sys.,* 675 F. 2d 949, 952 (7th Cir. 1982) ("the jury might infer from evidence of the prior accident alone that [defect] existed …and was the cause of the later accident without those issues ever having been proved."); *Olson v. Ford Motor Co.,* 481 F.3d 619 (8th Cir. 2007) (refusing to permit testimony in a product liability action because of a potential confusion of the issues, delay, and wanting to avoid, "mini-trials")

First, allowing the evidence contained in the NEISS database through documents or plaintiff's experts' testimony would amount to allowing the injured claimants in those other cases to testify without being subject to cross-examination. Second, by permitting the inference of defect and/or causation, and/or Ryobi's knowledge of alleged BTS10 design defect based solely on the other accidents contained in the NEISS database, plaintiff would be allowed to circumvent the rigors of expert testimony on defect and causation as outlined in *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579 (1993), as he can likely avoid the presentation of expert testimony altogether and simply allow the jury to draw their own conclusions.

Finally, if the Court were to permit the other accident evidence contained in the NEISS database, One World would require substantial amount of time to address each accident/incident in detail and contest any proffered evidence of substantial similarity with evidence of its own. The process would involve an avalanche of collateral questions and competing arguments involving each alleged prior incident, which will result in unavoidable confusion, and "mini-trials" on collateral issues. On this basis alone, this Court should exclude any introduction of the NEISS other accidents at trial. *See Brooks v. Chrysler Corp.,* 786 F.2d 1191, 1198 (D.C. Cir. 1986) (excluding National Highway Transportation Safety Administration statistics because the evidence was substantially outweighed by risk of prejudice, delay and confusion that would arise due to collateral issues).

To avoid the substantial prejudicial harm of the jury potentially concluding that because a governmental agency believes that there are over 34,000 table saw injuries each year, table saws – regardless of design or safety features – are inherently defective, and BTS 10 used by Mr. Wielgus was both defective and unreasonably dangerous, this Court should preclude the introduction of any statistical evidence derived from the NEISS database at this trial.

**IV. The CPSC/NEISS Data and Reports Are Not Admissible As Foundation for Plaintiff's Experts' Opinions.**

The plaintiff may also argue that even if the NEISS other accident data and the CPSC reports are inadmissible in and of themselves, they are admissible as foundation to his experts' opinions. Any such argument is unavailing, as Fed. R. Evid. 703 makes it clear that expert opinions based on inadmissible hearsay are to be admitted only if (1) the data are "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject," and (2) if "the court determines that [the underlying data's] probative value in assisting the jury to evaluate the expert's opinion substantially outweighs its prejudicial effect. Fed. R. Evid. 703 (amended 2000).

#2913800   12

Neither of these requirements is satisfied in the instant case. The advisory committee notes state that the amendment "provides a presumption against disclosure to the jury of information used as the basis of an expert's opinion and not admissible for any substantive purpose, when that information is offered by the proponent of the expert." Fed. R. Evid. 703, Advisory Committee Notes. *See also Sommerfield v. City of Chicago*, 254 F.R.D. 317 (N.D. Ill. 2008) ("While the sources of an expert opinion need not be admissible in evidence, they must be reliable" . . .The "cases teach that under Rule 703, an expert may rely on hearsay in formulating his opinion if it is of the type reasonably relied on by experts in the field, and that the evidence is not admissible for the truth of the matters asserted."); *Loeffel Steel Products, Inc. v. Delta Brands, Inc.*, 387 F. Supp. 2d 794, 808 (N.D.Ill.2005) ("while Rule 703 was intended to liberalize the rules relating to expert testimony and the bases on which that testimony could be based, it was not intended to abolish the hearsay rule and to allow a witness, under the guise of giving expert testimony, to in effect become the mouthpiece of the witnesses on whose statements or opinions the expert purports to base his opinion."). The Seventh Circuit in *Sommerfield* and *Ervin v. Johnson & Johnson, Inc.,* 492 F.3d 901, 905 (7th Cir. 2007) stressed that notwithstanding the wide latitude accorded experts in choosing the sources on which to base opinions, those sources must be shown to be reliable. *See also Nachtsheim,* 847 F.2d at 1271 (evidence excluded under a substantive Rule like 403 cannot come in under Rule 703).

Here, the plaintiff will not be able to establish that experts in the field of table saw design reasonably rely upon the NEISS/CPSC data and reports the plaintiff seeks to introduce to formulate expert opinions or inferences on the subject of the reasonableness of the design of the BTS10 table saw. To the contrary, the CPSC itself advises against reliance:

**CAUTION**

> NEISS data and estimates are based on injuries treated in hospital emergency rooms that patients say are <u>related</u> to products. Therefore it is <u>incorrect</u>, when using NEISS data, to say the injuries were <u>caused</u> by the product.

#2913800 13

(NEISS Data for 1997, p. 1, **Exhibit 4**, (emphasis in original).

Furthermore, neither can the plaintiff satisfy the second prong of the Rule 703 – that the underlying data's probative value in assisting the jury to evaluate the expert's opinion substantially outweighs its prejudicial effect. Clearly, the jury in this case will not be assisted by the specific estimate of the annual frequency of table saw accidents when evaluating Gass' or Holt's respective opinions regarding whether Ryobi's BTS10 benchtop table saw should have been equipped with a flesh-detecting device and/or an improved guard.

Even putting aside the facts that the statistics of the frequency of table saw accidents are mere extrapolations from a very small sample size and have not been verified or replicated by any other entity outside of the CPSC, where, as here the identities of the individuals claiming they suffered injuries *related to* (as opposed to "caused by") table saws, are unknown, the underlying data is too untrustworthy to be disclosed to the jury. *See generally Ricciardi v. Children's Hosp. Med. Ctr.,* 811 F.2d 18, 23 (1st Cir. 1987) (upholding exclusion of doctor's note describing incident during surgery where doctor's basis for knowing about the incident was unknown, despite Rule 803(6), because "[a]n unknown source is hardly trustworthy."); *Meder v. Everest & Jennings, Inc.,* 637 F.2d 1182, 1187 (8th Cir. 1981) (same); *McKinnon,* 638 F.2d at 278 (CPSC reports are "untrustworthy because they contain double hearsay," and the data is given by the biased victims).

Lastly, because there is a presumption against disclosure to the jury of the inadmissible evidence when the information is offered by the proponent of the expert, Fed. R. Evid. 703 advisory committee's note, and the plaintiff can advance no persuasive rationale for overcoming this presumption, the plaintiff cannot simply introduce the inadmissible NEISS/CPSC evidence by labeling it as a basis for his experts' opinions.

## CONCLUSION

Evidence of the NEISS other accidents and the CPSC reports derived from that data are inadmissible, and this Court should enter an order, *in limine,* precluding it. Specifically, the documents and any related testimony should not be referred to or admitted for any purpose, including, but not limited to, notice of hazards of table saws to the defendants and/or the alleged defect of the subject BTS10 benchtop table saw, because (1) the reports are composed of multiple levels of hearsay; (2) the evidence is not relevant under Fed. R. Evid. 401 and 402; (3) any probative value the evidence may have is substantially outweighed by its prejudicial effect under Fed. R. Evid. 403; and (4) the evidence is not admissible as the basis for expert opinions under Fed. R. Evid. 703.

For all of the reasons set forth above, Ryobi Technologies, Inc., One World Technologies, Inc. and Home Depot U.S.A., Inc. respectfully request that any evidence of the NEISS data and CPSC reports, including all documents and testimony concerning the same, be excluded, and for all other relief this Court deems appropriate.

Respectfully submitted,

**JOHNSON & BELL, LTD.**

/s/ John W. Bell
Attorneys for defendants Ryobi Technologies, Inc., One World Technologies, Inc. and Home Depot U.S.A., Inc.

| | |
|---|---|
| John W. Bell | ARDC No. 0161934 |
| Robert R. McNamara | ARDC No. 6194965 |
| Meghan M. Sciortino | ARDC No. 6287341 |
| Alexandria L. Bell | ARDC No. 6294858 |

JOHNSON & BELL, LTD.
33 West Monroe Street
Suite 2700
Chicago, Illinois 60603
(312) 372-0770
Fax: (312) 372-9818
E-mail: bellj@jbltd.com

#2913800

        mcnamarar@jbltd.com
        sciortinom@jbltd.com
        bella@jbltd.com

## CERTIFICATE OF SERVICE

    I hereby certify that on March 6, 2012, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

**JOHNSON & BELL, LTD.**

/s/ John W. Bell
Attorneys for defendants Ryobi Technologies, Inc., One World Technologies, Inc. and Home Depot U.S.A., Inc.

| | |
|---|---|
| John W. Bell | ARDC No. 0161934 |
| Robert R. McNamara | ARDC No. 6194965 |
| Meghan M. Sciortino | ARDC No. 6287341 |
| Alexandria L. Bell | ARDC No. 6294858 |

JOHNSON & BELL, LTD.
33 West Monroe Street
Suite 2700
Chicago, Illinois 60603
(312) 372-0770
Fax: (312) 372-9818
E-mail:    bellj@jbltd.com
        mcnamarar@jbltd.com
        sciortinom@jbltd.com
        bella@jbltd.com