UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JAROSLAW WIELGUS, | ) | |
| | ) | 08 CV 1597 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Magistrate Judge Young B. Kim |
| | ) | |
| RYOBI TECHNOLOGIES, INC., et al., | ) | |
| | ) | May 16, 2012 |
| Defendants. | ) | |

**MEMORANDUM OPINION and ORDER**

In this product-liability suit brought pursuant to this court's diversity jurisdiction, Jaroslaw Wielgus alleges that Ryobi Technologies, Inc., One World Technologies, Inc., and Home Depot, USA, Inc. (collectively, "the defendants"), are liable for hand injuries he sustained in March 2006 while using the Ryobi Model BTS10S—a table saw that the defendants manufactured and/or sold. His complaint includes claims for negligence, breach of implied warranty, and strict liability under Illinois law. (R. 84.) The parties consented to this court's jurisdiction, (R. 65; R. 90), and the case has progressed to the pre-trial phase. Currently pending before this court are four motions in limine filed by Wielgus and 37 filed by the defendants. To streamline the resolution of this voluminous set of motions, the court has grouped them into several distinct categories and plans to roll out a series of opinions dealing with each category separately. In this first opinion, the court tackles Wielgus's first motion in limine along with defendants' motion numbers 10, 15, 29, and 31. These motions all center on the safety of the blade-guard attached to the BTS10S or relate to alleged safety

issues connected to the BTS10S generally but not involved in Wielgus's accident specifically. For the following reasons, Wielgus's first motion in limine (R. 205) is granted in part and denied in part, defendants' motion numbers 10 (R. 177) and 29 (R. 196) are granted, defendants' motion number 15 (R. 182) is denied, and defendants' motion number 31 (R. 198) is granted in part and denied in part.

## Legal Standard

Federal district courts have broad discretion in ruling on motions in limine. *Aldridge v. Forest River, Inc.*, 635 F.3d 870, 874-75 (7th Cir. 2011). Such motions perform "a gatekeeping function and permit[] the trial judge to eliminate from further consideration evidentiary submissions that clearly ought not be presented to the jury because they clearly would be inadmissible for any purpose." *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997). The moving party bears the burden of demonstrating blanket inadmissibility. *See Mason v. City of Chicago*, 631 F.Supp.2d 1052, 1056 (N.D. Ill. 2009). Absent that showing, evidentiary rulings should be deferred until trial, where decisions can be better informed by the context, foundation, and relevance of the contested evidence within the framework of the trial as a whole. *Anglin v. Sears, Roebuck & Co.*, 139 F.Supp.2d 914, 917 (N.D. Ill. 2001). "A pre-trial ruling denying a motion in limine does not automatically mean that all evidence contested in the motion will be admitted at trial," *Bruce v. City of Chicago*, 09 CV 4837, 2011 WL 3471074, at *1 (N.D. Ill. July 29, 2011), because the court

is free to revisit evidentiary rulings as appropriate in its exercise of discretion, *see Luce v. United States*, 469 U.S. 38, 41-42 (1984).

## Analysis

The core issue to be resolved at trial in this case is whether the Ryobi BTS10S was unreasonably dangerous when it left the defendants' control in 2005. *See Faucett v. Ingersoll-Rand Min. & Mach. Co.*, 960 F.2d 653, 655 (7th Cir. 1992). Wielgus plans to show that the saw was unreasonably dangerous in part by demonstrating that his injuries would not have occurred had the BTS10S been equipped with safety devices including a riving knife or a modular blade guard. He also seeks to introduce evidence of alleged safety flaws that were not directly involved in his own accident. Those claimed flaws include, among other things, the BTS10S's allegedly inadequate warnings, the ease and frequency with which users of the saw removed the blade guard, and other supposedly flawed parts or engineering controls. The following motions deal with the disputes surrounding these categories of evidence.

I. **Plaintiff's Motion in Limine to Preclude Defendants From Using as a Defense the Technological or Economic Feasibility of Incorporating Either a Riving Knife or a Modular Blade Guard**

In his first motion in limine, Wielgus seeks to prevent the defendants from disputing the technological or economic feasibility of incorporating either a riving knife or a modular blade guard into the BTS10S. These devices maintain a constant distance between the guard and the back of the saw blade and help to prevent the user's hand from contacting the blade

3

during kickback incidents like the one that caused Wielgus's injuries. Wielgus argues that the defendants cannot contest the feasibility of incorporating those devices in this case because they made what Wielgus characterizes as judicially binding admissions to the contrary in four related actions pending in the United States District Court for the District of New Jersey ("the New Jersey actions"). Those statements took place in the context of a discovery dispute in the New Jersey actions surrounding whether the defendants would be required to produce documents relating to their incorporation of riving knives and modular blade guards into table saws in accordance with UL 987, an industry safety standard that went into effect on January 31, 2010. In disputing the New Jersey plaintiff's discovery request, the defendants took the position that they "have never asserted and will not assert that the modular blade guard that is now in use was not feasible at the time of the manufacture of the saws at issue." (R. 205, Ex. A, June 10, 2011 Ltr. Br. at 7.) Wielgus argues that in light of this statement of their position in the New Jersey actions, the defendants should be judicially estopped in this case from challenging the feasibility of incorporating a riving knife or a modular blade guard onto the BTS10S.

In response to Wielgus's motion, the defendants state that they will not dispute that incorporating a riving knife or a modular blade guard into the BTS10S would have been *technologically* feasible prior to January 31, 2010, when UL 987 took effect. Rather, the defendants plan to argue only that it was not *economically* feasible for them to incorporate these features prior to UL 987's effective date. According to their theory, incorporating the

4

riving knife or modular blade guard into their table saws prior to January 31, 2010, would have violated the then-existing UL standard, which in turn would have prevented them from selling the saws through mainstream distributors and stores. The defendants argue that this is the exact position they took in the New Jersey actions, as revealed by their attorney's statements when viewed in their entirety:

> It was feasible in the sense that it could have physically been put on; however, these saws are manufactured pursuant to safety regulations . . . [a]nd the use of . . . the current guard, would have been a violation of the safety standard published by [UL] at the time these saws were manufactured. . . . Physically it would have been feasible to use those guards—the guards that are currently being used, but I'm not saying that would have met the safety standard. In fact, it would have been a violation of the safety standard in effect at the time the saws we're talking about in this case.

(R. 234, Defs.' Resp., Ex. C at 38-39.) In other words, according to the defendants, their position in the New Jersey actions was the same as their position here, that incorporating the riving knife or modular blade guard would have been feasible from the perspective of implementation cost and technology, but not commercially feasible because prior to the effective date of UL 987 those modifications would have affected their ability to sell the table saw at stores that require compliance with industry safety standards.

This court agrees with the defendants that Wielgus reaches too far in his attempt to paint their prior representations in the New Jersey actions as a blanket admission that incorporating a riving knife or modular blade guard onto the BTS10S was feasible in every respect. The evidence that Wielgus has submitted regarding the defendants' statements shows that their counsel preserved their challenge to the commercial feasibility of the

5

relevant changes. Viewing his statements in their entirety, it is clear that the defendants' counsel was conceding the technological feasibility of certain features while preserving his clients' ability to argue that those alternate features would have rendered the saw unmarketable prior to 2010. Under Illinois law, Wielgus is entitled to prove that the BTS10S was unreasonably dangerous when it left the defendants' control by showing that an alternative design was feasible. *See Blue v. Environmental Eng'g, Inc.*, 215 Ill.2d 78, 93 (2005). But he must show that it "was feasible in terms of costs, practicality, and technology." *See id.* The defendants' prior statements amount to admissions only with respect to the question of technological feasibility, but they are not sufficient to justify the application of judicial estoppel with respect to the questions of cost and practicality. Accordingly, Wielgus's first motion in limine is granted only to the extent that the defendants will be precluded from arguing that it was not technologically feasible to incorporate a riving knife or modular blade guard into the BTS10S prior to 2010. The motion is denied to the extent that Wielgus seeks to preclude the defendants from showing that those features were not economically feasible.

## II. Defendants' Motion in Limine No. 15 to Preclude Evidence of David Peot's 2004 Guard Design Patent

Somewhat related to Wielgus's first motion is defendants' motion number 15, which seeks to preclude any evidence regarding the 2004 patent application filed by David Peot, Ryobi's former director of advanced technologies, describing a new blade-guard design for table saws. In what the defendants now describe as Peot's attempt to differentiate his

proposed design from the traditional guard designs, Peot's application includes terms like "flimsy" and "difficult to use" in describing the kind of guard that came with the BTS10S model involved in Wielgus's accident. The defendants argue that any statements made in the patent application are inadmissible hearsay and are irrelevant to the question of whether the BTS10S was reasonably safe for its intended purposes. They also argue that the prejudicial impact of Peot's statements outweighs their probative value because it is "undeniable" that patent applicants say things in support of their applications that are biased and untrustworthy in an attempt to make their inventions "stand out from the rest." (R. 182, Mot. ¶¶ 3, 6.)

This court agrees with Wielgus that Peot's patent application is directly relevant to his position that an alternative blade-guard design was feasible when the BTS10S was manufactured. Although the defendants have said they will not contest the technological feasibility of an alternate blade guard, their stipulation in that regard does not eliminate Wielgus's entitlement to present evidence to the jury on the issue. *See Blue v. International Bhd. of Elec. Workers Local Union 159*, __ F.3d __, 2012 WL 1071704, at *5 (7th Cir. April 2, 2012). This court also agrees with Wielgus that Peot's statements are admissible under Federal Rule of Evidence 801(d)(2)(D) as a party admission. A statement is not hearsay if it is offered against a party and "was made by the party's agent or employee on a matter within the scope of that relationship and while it existed." Fed. R. Evid. 801(d)(2)(D). All the rule requires is that "the statement be made by an individual who is an agent, that the statement be made during the period of the agency, and that the matter be within the subject

7

matter of the agency." *Young v. James Green Mgmt., Inc.*, 327 F.3d 616, 622 (7th Cir. 2003). The defendants admit that at the time Peot completed the patent application, he was employed as Ryobi's director of advanced technologies, and they have submitted no response to Wielgus's assertion that the patent application falls within the subject matter of Peot's work at Ryobi because he submitted the patent application either on Ryobi's behalf or with its permission. (R. 233, Pl.'s Resp. at 76.) Accordingly, the defendants have not met their burden of showing that the patent application should be excluded as hearsay.

Nor have the defendants demonstrated that the potentially prejudicial impact of Peot's statements outweigh their probative value under Rule 403. Evidence will be excluded under this rule only if its probative value is "insignificant compared to its inflammatory nature so that the evidence *unfairly* prejudices the defendant." *United States v. Gorman*, 613 F.3d 711, 720-21 (7th Cir. 2010) (emphasis in original) (internal quotation marks omitted). Nothing about the statements the defendants have highlighted can be characterized as inflammatory, let alone unfairly prejudicial, especially given their concession that the technology it describes was feasible as early as 2004. For all of these reasons, defendants' motion in limine number 15 is denied.

**III. Defendants' Motion in Limine No. 10 to Bar Reference to Alleged Defective Conditions in the Subject BTS10S Which Did Not Cause or Contribute to the Subject Accident**

In their motion number 10, the defendants seek to exclude any evidence pertaining to any allegedly deficient design features of the BTS10S that did not cause or contribute to

8

Wielgus's accident. Specifically, they ask this court to prevent Wielgus's Rule 26 expert, Darry Robert Holt, from testifying regarding what he has characterized as deficiencies in the BTS10S's fence assembly, table insert, table surface, miter gauge, and other safety features. According to the defendants, because none of the cited "deficiencies" were at play in Wielgus's accident, they should be excluded as being irrelevant and unfairly prejudicial. *See* Fed. R. Evid. 401-03. Wielgus responds by asserting that he will not use the evidence regarding these defects to show causation, but rather to bolster the "duty" and "breach" elements of his negligence claims. According to him, Holt's testimony will show two things: (1) that the BTS10S had a high propensity for accidents related to blade contact, leading to a duty on the part of the defendants to follow what he describes as "well-established risk avoidance principles"; and (2) a breach of that duty in the defendants' failure to adopt better safety features, such as flesh-detection technology. (R. 233, Pl.'s Resp. at 62-63.)

Although Holt's testimony regarding what he views as deficiencies in the BTS10S's design are not relevant to causation, whether it is admissible to show duty and breach is a closer call. On the one hand, the purported flaws Holt identifies might lead to a duty to implement better safety features to make the saw safer; on the other hand, the disconnect between those flaws and Wielgus's accident renders the testimony of limited use. It is as if in a case involving a child who is injured after choking on a small toy the plaintiff were to introduce evidence that the toy contained toxic chemicals that could poison a child, even though poison had no role in the hypothetical plaintiff's injuries. The chemicals might render

9

the toy unreasonably dangerous, but not with respect to the injuries sustained by the hypothetical choking victim. Here, Wielgus can establish the duty and breach elements of his claim by relying on what he believes to be the unsafe features that contributed to his accident. Asking the jury to sift through evidence related to tangential perceived design flaws is likely to lead to confusion and unlikely to help it resolve the issues at stake.

In support of his opposition to the defendants' motion, Wielgus asserts that the district judge in a related case, *Osorio v. One World Techs., Inc.*, 716 F.Supp.2d 155 (D. Mass. 2010), denied this same motion and that the First Circuit upheld the decision. But the transcript conveying the *Osorio* judge's decision on the relevant motion in limine shows that the judge denied the defendants' motion as "overly broad," but informed the plaintiff that he would have to explain why that evidence is relevant before it would be admitted at trial. (R. 233, Pl.'s Resp., Dwyer Aff., Ex. J, Feb. 4, 2010 Hearing Tr. at 6.) In affirming the judge's decision to let this evidence in, the First Circuit determined that Holt's testimony regarding defects in a blade guard the plaintiff had admitted not using were relevant to "whether Osorio was partly at fault for the accident that caused his injury" because he had removed the safety device. *Osorio v. One World Techs., Inc.*, 659 F.3d 81, 90-91 (1st Cir. 2011). In other words, Holt's testimony in *Osorio* regarding the allegedly flawed blade-guard design was relevant there because the plaintiff sought to prove that he was not the only consumer who removed the safety guard before using the saw at issue, and that Ryobi should have accounted for that situation. *Id.* at 91. Here, Wielgus has not argued that any of the

10

deficiencies Holt identifies have any bearing on his accident or the defendants' duties with respect to the design flaws that caused or contributed to his accident. That is a significant point of departure between this case and *Osorio*. Because the defendants here have persuasively argued that the extraneous defects Holt identifies are not relevant to the issues to be decided in this case, motion number 10 is granted.

### IV. Defendants' Motion in Limine No. 29 to Bar Reference to Some Users Allegedly Not Using the Guard

Similarly, in motion 29 the defendants seek to bar Wielgus from introducing evidence that BTS10S users commonly removed the blade guard and used the saw without the guard because the blade guard is perceived as being difficult to use. The defendants point out that Wielgus was using the blade guard at the time of his accident, and argue that accordingly, whether other consumers sometimes removed the guard has no bearing on the issues in this case. In opposing the motion, Wielgus again asserts that this evidence is broadly relevant to his claim that the defendants breached their duty, and argues that the fact that he *was* using the blade guard at the time of his injury "is not germane." (R. 233, Pl.'s Resp. at 97.)

Wielgus's reliance on the *Osorio* decision to support this relevance argument is unhelpful. In *Osorio*, the First Circuit upheld the admissibility of evidence regarding other users' propensity not to use the blade guard specifically because "Ryobi's counsel tried to convince the jury that Osorio was largely to blame" because he conceded that he had not used the blade guard. 659 F.3d at 91. There, Osorio tried to counter Ryobi's argument regarding his contributory negligence by showing "that it was common for consumers to remove this

11

equipment and that Ryobi should have accounted for this probability in its design." *Id.* Here, the parties agree that Wielgus was using the blade guard at the time of his accident. Thus, the contributory negligence issue that justified introducing the evidence of how other users treated the blade guard in *Osorio* is not at play here.

Wielgus argues that this evidence is nonetheless relevant because it demonstrates that the defendants had a duty to install flesh-detection technology to protect users who removed the blade guard, and that had they fulfilled that duty, Wielgus's injuries could have been prevented. He can make his point at trial by introducing evidence that is more in line with how Wielgus was using the BTS10S prior to the accident: that the defendants knew about kickback accidents that were substantially similar to Wielgus's, that an improved blade guard could have prevented his injuries, and/or that the blade guard in question was generally defective, "flimsy," and inadequate. When balanced, the danger of jury confusion posed by the introduction of evidence that users commonly removed the blade guard outweighs any possible probative value such evidence may lend to support Wielgus's theory. Accordingly, defendants' motion number 29 is granted.

V.  **Defendants' Motion in Limine No. 31 to Bar Reference to Inadequacy of Warnings**

In defendants' motion number 31, they seek to preclude Wielgus from introducing any evidence or argument regarding alleged defects in the warnings, instructions, or safety labels attached to the BTS10S. In support of the motion, the defendants cite Wielgus's deposition testimony in which he admitted that he never read the saw's operating manual. They argue

12

that in light of this testimony there is no support for "an argument that the presence of adequate warnings or instructions would have prevented his injuries," and that accordingly, any reference to the inadequacy of the safety information as the proximate cause of Wielgus's injuries must be barred. (R. 198, Mot. ¶ 2.) In response, Wielgus argues that he should be able to argue that the inadequacy of the warnings on the saw itself—rather than in the operating manual—contributed to his injuries and that evidence of the absence of warnings in the manual is admissible to rebut certain testimony of the defendants' proposed expert, Peter Domeny.

"[U]nder established Illinois precedent, when a design defect is present at the time of sale, the manufacturer has a duty to take reasonable steps to warn at least the purchaser of the risk as soon as the manufacturer learns or would have learned of the risk created by its fault." *Jablonski v. Ford Motor Co.*, 2011 IL 110096, ¶ 11. But among the limits on that duty is the rule that where a "plaintiff failed to read the warning labels, the alleged inadequate content of those warnings could not have proximately caused his injuries." *Kane v. R.D. Werner Co., Inc.*, 275 Ill.App.3d 1035, 1037 (1st Dist. 1995). In other words, the plaintiff pressing a failure-to-warn case must show that a better warning would have prevented his injuries—a bleak prospect where the plaintiff neglected to consult the warnings at all. *See Broussard v. Houdaille Indus., Inc.*, 183 Ill.App.3d 739, 744-45 (1st Dist. 1989).

Although the parties have briefed this motion as if it were contested, it is unclear that there is any real disagreement about how the evidence surrounding the BTS10S's warning

13

symbols can be used. The defendants have made clear that they "are not moving to bar any and all evidence relating to the warnings and instructions," but rather seek to bar evidence that attempts to establish that inadequate safety information was "the proximate cause of plaintiff's injuries" given Wielgus's admission that he did not read the operating manual. (R. 198, Mot. ¶ 7.) Wielgus admits that he did not read the operating manual but argues that he should be allowed to show that the warnings on the saw itself were inadequate. That position is consistent with the case law cited by the defendants, in that Wielgus will only be allowed to argue that the warnings on the BTS10S itself were inadequate if there is evidence that he read those warnings or that the placement of the warnings on the saw was somehow inadequate. *See Kane*, 275 Ill.App.3d at 1036 (noting that a failure to warn claim may be maintained despite a plaintiff's failure to read the warning where the plaintiff claims "the warning is inadequate with respect to prominence" (citation omitted)).

With respect to the warnings in the operating manual, Wielgus does not assert that he should be allowed to create a connection between their alleged inadequacy and his injury, but rather argues that he should be allowed to reference their inadequacy only to cross-examine the defendants' expert, Peter Domeny. Domeny may testify that Wielgus was injured in part because he was misusing the saw by placing his left hand on top of the work piece to hold it in place. To the extent Domeny offers that testimony, Wielgus argues that he should be allowed to cross-examine him regarding the fact that the BTS10S's operating manual does not describe that hand positioning as a misuse. In other words, Wielgus will offer the manual

x

only to cast doubt on the expert's testimony criticizing his use of the saw. According to Wielgus, the defendants' choice not to describe the cited hand position in the operating manual as a "misuse" of the saw demonstrates that—contrary to Domeny's proposed testimony—they do not actually consider that positioning a misuse. Wielgus's failure to consult the manual does not prevent him from relying on it for this limited purpose. Accordingly, defendants' motion number 31 is granted to the extent that Wielgus will not be allowed to argue that any inadequacy of the warnings in the operating manual proximately caused or contributed to his injuries. The motion is denied to the extent that the defendants seek to preclude Wielgus from arguing that the warnings on the saw itself were inadequate. It is further denied to the extent that Wielgus intends to offer evidence regarding the operating manual to rebut anticipated testimony from Domeny criticizing Wielgus's handling of the saw.

## Conclusion

For the foregoing reasons, Wielgus's first motion in limine (R. 205) is granted in part and denied in part, defendants' motion numbers 10 (R. 177) and 29 (R. 196) are granted, defendant's motion number 15 (R. 182) is denied, and defendants' motion number 31 (R. 198) is granted in part and denied in part.

**ENTER:**

*[signature]*
Young B. Kim
United States Magistrate Judge