UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAROSLAW WIELGUS, ) | |
| ) | 08 CV 1597 |
| Plaintiff, ) | |
| ) | |
| v. ) | Magistrate Judge Young B. Kim |
| ) | |
| RYOBI TECHNOLOGIES, INC., et al., ) | |
| ) | June 18, 2012 |
| Defendants. ) | |

**MEMORANDUM OPINION and ORDER**

In this diversity case Jaroslaw Wielgus alleges that Ryobi Technologies, Inc., One World Technologies, Inc., and Home Depot, USA, Inc. (collectively, "the defendants"), are liable under theories of negligence, strict liability, and implied warranty for hand injuries he suffered while using a table saw that they manufactured or sold. This is the third memorandum opinion this court has issued addressing a subset of the 41 motions in limine the parties have filed. In the current opinion, this court will resolve the eight motions in limine brought by the defendants to exclude evidence centering around Wielgus's theory that the defendants and other manufacturers agreed to avoid incorporating flesh-detection technology into their saws in an effort to control their collective liability for blade-contact injuries. For the following reasons, the defendants' motion number 14 (R. 181) is denied, motion numbers 13 (R. 180), 21 (R. 188), 35 (R. 202), 36 (R. 203), and 37 (R. 204) are denied without prejudice, motion number 33 (R. 200) is granted, and motion number 34 (R. 201) is granted in part and denied in part.

**Legal Standard**

Included in the district court's inherent authority to manage trials is the broad discretion to rule on motions in limine. *Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002). The purpose of a motion in limine is to prevent the jury from hearing evidence that is "clearly inadmissible on all possible grounds." *Anglin v. Sears, Roebuck & Co.*, 139 F.Supp.2d 914, 917 (N.D. Ill. 2001). Accordingly, in some instances it is best to defer rulings until trial, where decisions can be better informed by the context, foundation, and relevance of the contested evidence within the framework of the trial as a whole. *Id.* A pre-trial ruling denying a motion in limine "does not necessarily mean that all evidence contested by the motion will be admitted at trial." *Hawthorne Partners v. AT&T Techs., Inc.*, 831 F.Supp. 1398, 1401 (N.D. Ill. 1993). The court will consider objections as to specific proffers in the context of the trial, "even though the proffer falls within the scope of a denied motion in limine." *Id.*

**Analysis**

At the trial in this case the jury will be asked to decide whether the table saw model that caused Wielgus's injuries—the Ryobi BTS10S—was unreasonably dangerous when it left the defendants' control in 2005. *See Faucett v. Ingersoll-Rand Min. & Mach. Co.*, 960 F.2d 653, 655 (7th Cir. 1992). Wielgus plans to show that the saw was unreasonably dangerous in part by offering evidence that a feasible alternative design was available at the time the Ryobi BTS10S was manufactured. *See Mikolajczyk v. Ford Motor Co.*, 231 Ill.2d

516, 525-26 (2008). One of the alternative designs to which Wielgus intends to point involves the incorporation of flesh-detection technology called "SawStop," which was designed by Steven Gass, a physicist and recreational table saw user. SawStop relies on the capacitance of the human body to detect contact between human flesh and a saw blade. When the flesh-detection device is triggered it signals the saw to brake. The result, according to Wielgus, is that accidents that might otherwise have resulted in a severe laceration or amputation will cause only a scratch or minor cut. The motions in limine addressed in this opinion all center around evidence that Wielgus intends to introduce to show that the defendants refused to incorporate SawStop technology into its table saws for reasons other than its feasibility.

**I.     Defendants' Motion in Limine No. 14 to Bar Reference to Conduct of Non-Parties and Alleged Conspiracy Theory**

The defendants' motion number 14 is denied. In this motion the defendants seek to preclude Wielgus from introducing any evidence or arguments "regarding any alleged improper conduct of other manufacturers, or industry trade groups or alleged conspiracy among manufacturers." (R. 181, Mot. at 1.) They bring the motion in response to Wielgus's intention to show at trial that in 2002, the defendants abandoned negotiations then underway with Gass to license the SawStop technology. According to Wielgus, they ended the negotiations because they had entered into what Wielgus describes as a "conspiracy" among competitors in the table saw industry to boycott SawStop. Wielgus intends to show that between 2003 and 2009 the defendants and other manufacturers were part of a joint

3

venture—affiliated with the Power Tool Institute and partially led by the defendants' former director of engineering, David Peot, and the defendants' expert, Peter Domeny—to develop their own flesh-detection technology. Wielgus asserts that the joint venture was formed because the manufacturers decided it would be "easier for any given manufacturer to argue that SawStop was not feasible in any subsequent personal injury suit if none of the major saw manufacturers had adopted the technology." (R. 233, Pl.'s Resp. at 74 n.8.) Peot admitted to the existence and purpose of this conspiracy in a related case, according to Wielgus, where he testified that the defendants "were concerned that if one manufacturer adopted SawStop and the other manufacturers didn't that they would be subject to potential liability for not adopting something that was shown to be feasible because one manufacturer put it out on the market." (Id., Dwyer Aff. Ex. S, Feb. 25, 2010 Tr. at 125-26.)

      The defendants ask this court to exclude under Federal Rules of Evidence 402 and 403 any evidence or argument pertaining to this alleged "conspiracy." According to the defendants, the conduct of non-party manufacturers is irrelevant to any issue in this case, and even if the evidence is marginally relevant, it should be excluded because it is "designed simply to inflame the jury." (R. 181, Mot. ¶¶ 2, 6.) But evidence is relevant "if it has any tendency to make a fact more or less probable than it would be without the evidence," Fed. R. Evid. 401(a), and this court agrees with Wielgus that the proposed evidence is relevant in at least two respects. First, to the extent that the defendants intend to argue that they did not incorporate SawStop technology into their table saws because it was not feasible to do so,

4

Wielgus's evidence regarding their collective plan to avoid SawStop as a means of limiting potential liability directly contradicts that position. Second, even the defendants concede that to succeed on his negligence claim Wielgus will have to show that the defendants deviated from the standard of care followed by other table saw manufacturers. *See Blue v. Environmental Eng'g, Inc.*, 215 Ill.2d 78, 96 (2005). Wielgus's conspiracy evidence is therefore also relevant to contradict any assertion by the defendants that incorporating flesh-detection was not the standard of care followed by table saw manufacturers. The purpose of Wielgus's evidence is to show that the reason flesh-detection technology was not the standard of care was not about its feasibility, necessity, or effectiveness, but instead was about the defendants' collective desire to shield themselves from tort liability while they developed their own technology over time. The resolution of that issue is relevant to the jury's ultimate determination of whether the BTS10S was unreasonably dangerous.

This court also disagrees with the defendants' position that the conspiracy-related evidence should be excluded under Rule 403. Evidence will be excluded under this rule only if its probative value is "insignificant compared to its inflammatory nature so that the evidence *unfairly* prejudices the defendant." *United States v. Gorman*, 613 F.3d 711, 720-21 (7th Cir. 2010) (emphasis in original) (internal quotation marks omitted). "Evidence is unfairly prejudicial in the context of Rule 403 if it will induce the jury to decide the case on an improper basis, commonly an emotional one, rather than on the evidence presented." *Whitehead v. Bond*, __ F.3d __, 2012 WL 1813683, at *10 (7th Cir. May 21, 2012)

5

(quotation and citation omitted). Although the disputed evidence may prejudice the defendants' case from the standpoint that it casts doubt on their feasibility stance, it is unclear that there is anything unfair about that potential prejudice. Most relevant evidence is prejudicial to the opposing side. This court understands the defendants' concern about the jury's potentially emotional reaction to a term like "conspiracy" when none has been pled, but the probative value of the details of the manufacturers' agreement is significant enough for the court to tolerate that small risk. *See id.* The defendants will remain free to object at trial if Wielgus's counsel crosses any lines using inflammatory words to describe the conspiracy or in characterizing the facts to the jury. Because the proposed evidence is relevant and its probative value outweighs any potentially unfair prejudicial impact, defendants' motion number 14 is denied.[1]

## II. Defendants' Motion In Limine No. 21 to Bar Evidence Regarding Proposed Licensing Agreement Between SawStop LLC and One World Technologies, Inc.

The defendants' motion number 21 is denied without prejudice. The defendants seek to preclude Wielgus from offering any evidence regarding their negotiations with Gass to

---

[1] It is worth noting that in the trial that played out in similar litigation involving the same defendants in the United States District Court for the District of Massachusetts, the court allowed the plaintiff in that case to introduce evidence of a manufacturer conspiracy to avoid SawStop. In affirming the verdict in that case the First Circuit implicitly condoned that decision, finding that the district court did not abuse its discretion in refusing to grant a new trial in response to the defendants' argument that the court improperly allowed the plaintiff's counsel to connect "Ryobi with a ten-year power tool manufacturer conspiracy to keep flesh-detection technology off the market." *Osorio v. One World Techs., Inc.*, 659 F.3d 81, 90 (1st Cir. 2011).

license the SawStop technology and to bar any reference to the terms of those negotiations. According to the defendants, because they have admitted that such negotiations took place, any facts surrounding those negotiations are no longer in contention. They argue that their admissions regarding the negotiations should simply be read into evidence at trial and that Wielgus's counsel should be prohibited from eliciting "lengthy testimony on these matters." (R. 188, Mot. ¶ 4.) Although it is true that binding judicial admissions effectively withdraw the admitted facts from contention, *see Keller v. United States*, 58 F.3d 1194, 1199 n.8 (7th Cir. 1995), the defendants have not cited any cases to support their contention that their admission regarding the negotiations prevents Wielgus from presenting evidence about those negotiations to fill in the groundwork for other relevant information supporting his claims. The defendants' stipulation as to the existence of the negotiations does not handcuff Wielgus from presenting evidence to the jury regarding, for example, the close timing of the negotiation breakdown and the defendants' decision to enter the flesh-detection joint venture. *See Blue v. International Bhd. of Elec. Workers Local Union 159*, 676 F.3d 579, 2012 WL 1071704, at *5 (7th Cir. April 2, 2012) (noting that the defendant's concession regarding a fact does not alter the plaintiff's entitlement "to make her case with evidence of her own choosing"). In any event, the defendants' objection is one best raised in the context of the trial, where the court will be in a better position to determine whether Wielgus is belaboring in a way that will distract or confuse the jury a point that is not in contention.

The defendants also seek to preclude as irrelevant any evidence regarding the details (rather than the existence) of their negotiations with Gass. According to the defendants, their discussions with Gass only involved the possibility of incorporating SawStop into an expensive and heavy cast-iron cabinet saw, not an inexpensive, light-weight table saw like the BTS10S. (R. 188, Mot. ¶¶ 6-8.) They argue that because the only issue in this case is whether the BTS10S was unreasonably dangerous or negligently designed, the evidence regarding the details of their negotiations to incorporate SawStop into a different model are irrelevant and likely to prejudice the defendants and confuse the jury.

The defendants' arguments go more to the weight of the proposed evidence then its admissibility. Wielgus correctly points out that the negotiations have some bearing on whether the defendants chose not to adopt flesh-detection technology before 2005 based on liability rather than feasibility concerns. The defendants are free to demonstrate and argue to the jury that the 2002 negotiations regarding the heavier cabinet saws have little bearing on the feasibility of incorporating SawStop into the BTS10S. They can reduce the risk of jury confusion on the matter by emphasizing the differences in the model saws on cross-examination and through their closing argument. Again, the defendants are free to re-raise their objection at trial should Wielgus's attorney belabor the minutiae of the 2002 negotiations in a way that strays too far off-topic. But because the proposed evidence is not "clearly inadmissible on all possible grounds" *see Anglin*,139 F.Supp.2d at 917, defendants' motion number 21 is denied without prejudice.

### III. Defendants' Motion in Limine No. 35 to Bar Power Tool Institute's Meeting Minutes

The defendants' motion number 35 is denied without prejudice. The defendants ask this court to preclude Wielgus from introducing into evidence the minutes from the Power Tool Institute's ("PTI") annual meetings. Wielgus describes the PTI as an "industry lobbying group through which the defendants and other table saw manufacturers coordinated both their joint ventures and their conspiracy to suppress the SawStop technology." (R. 233, Pl.'s Resp. at 107.) He seeks to introduce the PTI meeting minutes to show that the defendants were aware of SawStop as early as 2000 but agreed with the other members of the flesh-detection joint venture not to incorporate that technology. According to Wielgus, the minutes will also show that the defendants attempted to dissuade the Customer Product Safety Commission from making the incorporation of flesh-detection technology on saws mandatory. The defendants argue that the minutes are inadmissible because, according to them, they constitute inadmissible hearsay and are both irrelevant and unfairly prejudicial.

In responding to the defendants' hearsay argument, Wielgus asserts that the minutes are admissible under the business records exception to the hearsay rule. *See* Fed. R. Evid. 803(6). Rule 803(6) "excepts certain 'records of regularly conducted activity' from Rule 802's general ban on the admission of hearsay evidence," as long as those records carry a level of trustworthiness. *See United States v. Borrasi*, 639 F.3d 774, 779-80 (7th Cir. 2011). Although regularly-kept meeting minutes "almost certainly" fall within the exception, *id.* at 779, other reports or comments referenced in those minutes may lack trustworthiness and

9

constitute an extra layer of hearsay that renders them inadmissible to the extent they are offered for the truth of the matter asserted. *Id.* Here, it is unclear whether and how the meeting minutes reference other reports or comments. Moreover, to some extent Wielgus's own argument undermines his assertion that the minutes carry the level of trustworthiness that allows their introduction under this exception because he asserts that they are being offered in part to show that PTI officials doctored the minutes after-the-fact to "conceal the members' motives." (R. 233, Pl.'s Resp. at 109.) The Seventh Circuit has noted that an "inference of doctoring" may take meeting minutes out from under a related exception to the hearsay rule. *See United States v. Spano*, 421 F.3d 599, 604 (7th Cir. 2005). For these reasons, at this point this court lacks the information necessary to determine whether the portions of the PTI meeting minutes that Wielgus seeks to introduce fall squarely within the business records exception.

Wielgus also argues that the minutes do not constitute hearsay to the extent that he does not expect to offer them for the truth of the matters they convey. Here he finds firmer footing. Statements that are offered to establish the fact of what was said or the effect of the statement on the listener are not hearsay. *See United States v. Hanson*, 994 F.2d 403, 406 (7th Cir. 1993); *Martinez v. McCaughtry*, 951 F.2d 130, 133 (7th Cir. 1991). Wielgus argues that he seeks to introduce the meeting minutes to establish what PTI members were told, to show that particular statements were made, and to show that PTI officials "scrubbed" certain minutes to eliminate references in the meetings to "liability exposure." (R. 233, Pl.'s Resp.

at 109.) He also wishes to use them to impeach Peot and others who may testify regarding what was said at those meetings. Because Wielgus has offered several nonhearsay purposes for the minutes, at this time the court agrees that they are not excludable under Rule 803. Should Wielgus attempt to use the minutes at trial for the truth of what they record, the defendants will be free to renew their objection.

The defendants' only remaining argument in support of their motion consists of their blanket statement that the minutes "are absolutely irrelevant to any issues in this case and are highly prejudicial." (R. 35, Mot. ¶ 3.) That conclusory statement is insufficient to meet the defendants' burden of showing that the evidence should be excluded wholesale, especially in light of Wielgus's assertion that the minutes are probative evidence of the process behind the defendants' decision not to incorporate the SawStop technology. *See Mason v. City of Chicago*, 631 F.Supp.2d 1052, 1056 (N.D. Ill. 2009) (noting that party submitting a motion in limine bears the burden of demonstrating that the evidence is inadmissible for any purpose). For all of these reasons, the defendants' motion number 35 is denied without prejudice.

**IV.    Defendants' Motion in Limine No. 33 to Bar Statement that "Safety Doesn't Sell"**

In the defendants' motion number 33 they ask this court to prohibit Gass from testifying that an employee of a non-defendant saw manufacturer told him that "safety doesn't sell." According to the defendants, this statement should be barred because it constitutes hearsay and because, according to them, its probative value is outweighed by its

11

prejudicial impact. The defendants' hearsay argument is unconvincing because, obviously, Wielgus would not introduce this comment for the truth of the matter asserted. Wielgus is not pointing to the statement to show that safety is not a factor in a saw's commercial viability, but rather to show its impact on Gass as he realized that the manufacturers were unlikely to embrace his technology.

Although Wielgus has articulated nonhearsay purposes for the statement, *see United States v. Akinrinade*, 61 F.3d 1279, 1283 (7th Cir. 1995); *Hanson*, 994 F.2d at 406, it is hard for this court to see how the statement is relevant when offered for the reasons Wielgus proposes. It would be one thing if the statement had been made by a party to this case, but how Gass reacted to a statement made by someone who is not associated with a defendant manufacturer is so tangential to the issue of feasibility as to render it almost completely irrelevant. The defendants did not object to this statement on the basis of relevance, instead opting to argue that the prejudicial impact of the "safety doesn't sell" comment outweighs its probative value. This court agrees. Here the probative value of the non-party's statement is minimal to the point of vanishing when introduced for the purposes Wielgus proposes, and that value is outweighed by its potential to create juror confusion. Specifically, the likelihood that the jury will confuse the non-party's comment as representing the mindset of the defendants or as explaining the defendant's—rather than Gass's—course of conduct is sufficiently high to warrant its exclusion under Rule 403. Accordingly, the defendants' motion in limine number 33 is granted.

**V.     Defendants' Motion in Limine No. 34 to Bar Daniel Lanier's Speech to the DRI**

Next the defendants ask the court to bar Gass from making any reference to a SawStop presentation given by Black & Decker's legal counsel, Daniel Lanier, during a 2001 Defense Research Institute ("DRI") conference. Gass was present at the presentation, during which Lanier suggested that "if several years went by without any of the manufacturers adopting SawStop or flesh detection, the manufacturers could argue in the context of product liability lawsuits that the technology was not viable because no one had adopted it." (R. 233, Pl.'s Resp. at 106.) In his expert report, Gass explains that his reaction to the presentation was that Lanier "was suggesting that manufacturers should not voluntarily adopt the SawStop technology because then they might never have to." (R. 172-4, Ex. 3, Gass Report ¶ 19.) The defendants argue that this testimony should be excluded on relevance grounds because it constitutes "nothing more than his 'spin' on a lecture." (R. 201, Mot. ¶ 3.) They also assert—again in a conclusory manner—that the testimony is inadmissible hearsay.

The defendants once again have fallen short of their burden of showing that the disputed evidence is inadmissible on hearsay grounds, *see Mason*, 631 F.Supp.2d at 1056, largely because they have not developed any legal argument to support their conclusory assertions. As Wielgus points out, he does not intend to offer Lanier's statements for the truth of the matter they assert, but rather to explain when and why Gass realized that he would not make progress in negotiating with the manufacturers and that he would need to strike out on his own to incorporate the SawStop technology into table saws. It will also be

13

used to show the impact it had on representatives of the defendants who were present at the conference. Offering evidence to establish its impact on the listener or to provide background facts to explain a sequence of events are permissible, nonhearsay purposes. *See Akinrinade*, 61 F.3d at 1283; *Hanson*, 994 F.2d at 406.

But again, Wielgus's proposed use of the disputed evidence bumps into a relevance barrier. Wielgus insists that Gass should be able to discuss Lanier's comments to explain why he gave up on working with saw manufacturers to incorporate the SawStop technology into their products. But how Gass reacted to the speech and his personal reasons for developing his own technology are not relevant to whether it was feasible for the defendants to incorporate similar technology, which is the question the jury will be asked to decide. Thus to the extent Gass wishes to discuss the speech to describe its impact on him, the testimony will be excluded. On the other hand, the evidence is highly relevant to the extent that it is introduced to show its impact on the defendants, who, according to Wielgus, were present during the conference. The fact that they were aware of Lanier's proposed litigation strategy at the time they entered into the alleged agreement to forego SawStop technology is highly relevant to the merits of their feasibility defense. In other words, because the jury will be asked to decide why the defendants did not incorporate SawStop, Lanier's speech is relevant to the extent that Wielgus can show it influenced the defendants' course of action. Accordingly, to the extent that the defendants seek to preclude Gass from describing the impact Lanier's speech had on him, the motion is granted. But to the extent that the

14

defendants seek to keep the evidence out for the purpose of showing its impact on the defendants' representatives who were present during the speech, the motion is denied.

## VI. Defendants' Motion in Limine No. 36 to Bar Siwek's Purported SawStop Recommendation to Bosch

Defendants' motion number 36 is denied without prejudice. In this motion, the defendants ask this court to preclude Wielgus from questioning their expert, Peter Domeny, about his communications with Tom Siwek when they were both employed with the Bosch Group's Power Tool Division ("Bosch"). Specifically, they seek to prevent Wielgus from eliciting testimony from Domeny regarding Siwek's purported recommendation that Bosch incorporate SawStop technology into its power tool brands. The defendants argue that the evidence should be excluded on the grounds of relevance and hearsay and because, according to them, the evidence is "highly prejudicial" within the meaning of Rule 403.

This court finds that the defendants' motion is underdeveloped, overly broad, and premature. It is underdeveloped because the defendants do not explain why they believe that the prejudicial impact of this line of questioning would outweigh its probative value. It is overly broad because they do not identify any specific statement that should be excluded. Wielgus points out that Siwek has testified previously about issues such as his knowledge of Bosch's work on flesh-detection technology and the types of saws on which flesh detection can be used. It is unclear whether the defendants' objection extends to such testimony. The motion is premature because whether Wielgus enters into this line of questioning with Domeny on cross-examination will depend on his direct testimony. Its

15

relevance is thus best determined within the context of the trial. And to the extent the defendants' motion rests on the hearsay rule, that objection also will best be evaluated at trial, when the court will be in a better position to determine the precise purpose for which the evidence is introduced. If it is offered to show how Siwek's recommendation impacted Domeny's decision-making process, it may fall outside the bounds of Rule 801(c). *See Talmage v. Harris*, 486 F.3d 968, 975 (7th Cir. 2007).

VII. **Defendants' Motion in Limine No. 37 to Bar Reference to Customer's Inquiry About the SawStop Technology**

Defendants' motion number 37 is denied without prejudice. The defendants ask this court to exclude any reference to an email sent by a customer to One World Technologies in 2001, discussing an amputation and asking why it had not incorporated the SawStop technology. According to the defendants, the email constitutes inadmissible hearsay. But once again, the objection is premature because Wielgus has identified a nonhearsay purpose for which he intends to introduce the evidence at trial. Specifically, he argues that the 2001 email will be used to show that long before the subject saw was manufactured, the defendants had notice that customers were interested in SawStop and attributed their injuries to the absence of that technology. In other words, Wielgus intends to introduce the email not to establish that the customer was injured, but to show consumer interest and thus chip away at the defendants' argument that installing SawStop technology was not commercially feasible. To the extent Wielgus will introduce the email for these purposes, the defendants' hearsay objection is unfounded. *See United States v. Walker*, 673 F.3d 649, 657 (7th Cir.

2012) (noting that statements are admissible as nonhearsay when "not offered for their truth").

Wielgus argues that even if he were to introduce the email for its truth, it falls within the business records exception. But at this point, the court does not have enough information to determine whether the email qualifies under the Rule 803(6) exception. He will be given the opportunity to provide that context if the defendants renew their hearsay objection at trial. The court notes that once again the defendants raise an undeveloped objection under Rule 403. Without the benefit of an argument from the defendants or the submission of the email itself, the court has no basis on which to evaluate that objection.

**VIII. Defendants' Motion in Limine No. 13 to Bar Evidence Re: Awards to the SawStop Saws/Technology**

Defendants' motion number 13 is denied without prejudice. In this motion, the defendants ask this court to exclude "[a]ny evidence related to the awards the SawStop saws and the SawStop technology has received." (R. 180, Mot. at 1.) According to the defendants, any such evidence is irrelevant, unfairly prejudicial, and inadmissible because it constitutes hearsay. But again, the defendants' arguments are premature and will be dealt with best in the context of the trial. It is difficult to make any judgment about the relevance of an award without knowing what the specific award was, when it was issued, and the criteria behind it. And without that knowledge, it is impossible to evaluate its potential prejudicial impact against its probative value. *See* Fed. R. Evid. 403.

Moreover, evidence of awards does not always constitute hearsay. The only case that the defendants cite in support of their hearsay argument involved a criminal case in which the defendant and a police officer gave two different versions of the events underlying the defendant's conviction. *See People v. Roman*, 323 Ill.App.3d 988, 997 (1st Dist. 2001). The officer received an award of valor for his conduct in the underlying incident, and the award was introduced to demonstrate that he had acted correctly at the scene. *Id.* at 998. There, the award was introduced to bolster the truth of a contested issue—whether the officer acted properly. But here, Wielgus might introduce the SawStop awards, for example, as evidence of how the technology was perceived in the industry. The awards might be introduced as evidence that the defendants had knowledge that others considered the technology to be feasible. Those purposes fall outside of the hearsay rule, which might apply if Wielgus attempts to introduce the awards to prove that the SawStop technology was commendable or feasible, rather than to illustrate how it was perceived. Admittedly, that is a fine line, and one that is difficult to draw at this stage, when it is insufficiently clear which of the awards will be introduced and for what purpose. Because the defendants' objections will be served better in the course of the trial, where the court will be able to evaluate them in context, defendants' motion number 13 is denied without prejudice.

**Conclusion**

For the foregoing reasons, the defendants' motion number 14 (R. 181) is denied, motion numbers 13 (R. 180), 21 (R. 188), 35 (R. 202), 36 (R. 203), and 37 (R. 204) are denied without prejudice, motion number 33 (R. 200) is granted, and motion number 34 (R. 201) is granted in part and denied in part.

**ENTER:**

_____
Young B. Kim
United States Magistrate Judge