## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **JAROSLAW WIELGUS,** | ) | |
| | ) | **No. 08 CV 1597** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Magistrate Judge Young B. Kim** |
| | ) | |
| **RYOBI TECHNOLOGIES, INC.,** *et al.*, | ) | |
| | ) | **June 21, 2012** |
| **Defendants.** | ) | |

### MEMORANDUM OPINION and ORDER

In this product-liability suit brought pursuant to this court's diversity jurisdiction, Jaroslaw Wielgus alleges that Ryobi Technologies, Inc., One World Technologies, Inc., and Home Depot, USA, Inc. (collectively, "the defendants"), are liable for hand injuries he sustained in March 2006 while using the Ryobi Model BTS10S—a table saw that the defendants manufactured and/or sold. His complaint includes claims for negligence, breach of implied warranty, and strict liability under Illinois law. (R. 84.) The parties consented to this court's jurisdiction (R. 65, 90), and the case has progressed to the pre-trial phase. This is the fourth memorandum opinion this court has issued addressing a subset of the 41 motions in limine the parties have filed. In the current opinion, the court addresses Wielgus's second motion in limine together with defendants' motion number 32. These motions both center on the question of whether Wielgus, an undocumented or unauthorized alien,[1] may recover

---

[1] The Immigration Reform and Control Act of 1986 defines an alien as "any person not a citizen or national of the United States." 8 U.S.C. § 1101(a)(3). An "unauthorized alien" is one who is neither "lawfully admitted for permanent residence" nor "authorized to be . . .

economic damages for his lost future earnings and diminished earning capacity in an Illinois common law tort action.  For the following reasons, Wielgus's second motion in limine (R. 206) is granted in part and denied in part, and defendants' motion number 32 (R. 199) is granted in part and denied in part.  Wielgus is permitted to introduce evidence to demonstrate that he suffered economic damages as a result of his injuries but he must restrict his evidence to what he could lawfully earn outside the United States.

## Background

Wielgus is a Polish national who in 2000, gained entry into the United States on a six-month visitor visa.  (R. 206, Pl.'s Mot. at 2; R. 154, Pl.'s Mot. to Adjourn Trial.)  According to Wielgus, he presented a valid work visa to his employer when he began his employment but continued to work following its expiration.  *See* (R. 233, Pl.'s Resp. at 103; R. 233-1, Pl.'s Resp., Ex. Y at 41.)  At the time of his March 2006 accident, Wielgus was an undocumented alien, not authorized to work in the United States.  (R. 206, Pl.'s Mot. at 2.) Following the accident, in August 2007, Wielgus returned to Poland (id.), and he now lives in England where he has a construction business, (R. 230; R. 252).  As a result of violating the terms of his visitor visa, Wielgus is ineligible to secure any type of visa to gain entry into the United States for a period of 10 years from the date of his departure or until August 2017.[2]  (R. 154-1 at ¶ 7.)

───────────────

employed by this chapter by the Attorney General."  8 U.S.C. § 1324a(h)(3).

[2]  Plaintiff represented to the court that he is in the process of seeking an exception in order to personally appear and testify at his jury trial.

### Analysis

Wielgus and the defendants have moved this court to resolve the issue of whether an undocumented alien may recover lost future earnings and damages for the diminution in his future earning capacity in a tort action brought under Illinois law. The parties dispute whether *Hoffman Plastic Compounds, Inc. v. NLRB*, 535 U.S. 137 (2002), requires this court to conclude that federal immigration policy, as expressed by Congress in the Immigration Reform and Control Act of 1986 ("IRCA"), precludes Wielgus from recovering economic damages at United States wage levels.

The defendants first contend that Wielgus cannot recover any earnings that would be based on future unlawful employment in the United States and that allowing Wielgus to recover such earnings would undermine IRCA's objectives. Alternatively, the defendants argue that even if Wielgus can recover such earnings, he is limited to wages measured at the rates at which he could lawfully earn them outside the United States, not wages measured at the rates at which he could unlawfully earn them in the United States. Additionally, according to the defendants, Wielgus cannot recover those earnings he could legitimately earn working outside the United States in this case because he has failed to present any evidence supporting such earnings.

Wielgus counters that *Hoffman Plastic*, a case involving the National Labor Relations Board ("NLRB"), should be limited to labor law actions brought under the National Labor Relations Act ("NLRA"), and not extended to tort actions brought under state law where the

unauthorized alien did not obtain employment through fraudulent means. Wielgus claims that IRCA does not prevent recovery of lost future earnings in state personal injury actions because the defendants' tortious conduct resulted in the loss of future wages that could be earned not only in the United States, but anywhere Wielgus would seek to be employed. Also, Wielgus argues that precluding recovery would create a financial incentive for employers to hire undocumented workers, a result that is contrary to IRCA's objectives.

To resolve the question posed by the parties, it is first necessary to determine whether Illinois law allows undocumented aliens to recover lost future earnings at United States pay rates. If not, the court must then decide whether Illinois law allows undocumented aliens to recover any economic damages. If Illinois law does permit recovery of lost earnings that an undocumented alien could earn outside the United States, the court must then determine whether IRCA preempts this Illinois law.

IRCA is a "comprehensive scheme prohibiting the employment of illegal aliens in the United States." *Hoffman Plastic*, 535 U.S. at 147. In *Hoffman Plastic*, the Supreme Court noted that IRCA "'forcefully' made combating the employment of illegal aliens central to '[t]he policy of immigration law.'" *Id.* (quoting *INS v. National Ctr. for Immigrants' Rights, Inc.*, 502 U.S. 183, 194 n.8 (1991)). To accomplish its goals, IRCA makes it unlawful for an employer to knowingly hire an unauthorized alien. 8 U.S.C. § 1324a(a)(1)(A). IRCA mandates that prior to the start of employment, employers confirm the legal status of newly hired individuals by examining specified documents to verify their identity and eligibility for

4

employment. 8 U.S.C. § 1324a(b). Absent the required documentation, the applicant is ineligible for employment. 8 U.S.C. § 1324a(a)(1). IRCA further mandates discharge of the worker if, during the course of his employment, the employer learns that he is an unauthorized alien or that he has since become unauthorized after his hiring. 8 U.S.C. § 1324a(a)(2). IRCA also makes it unlawful for an unauthorized alien to obtain employment by tendering fraudulent documentation. 8 U.S.C. § 1324c(a). IRCA, however, does not otherwise prohibit undocumented aliens from seeking or maintaining employment. Employers and aliens who violate IRCA may be subject to civil fines (8 U.S.C. § 1324a(e)(4)(A); 18 U.S.C. § 1546(b)) and criminal prosecution (8 U.S.C. § 1324a(f)(1); 18 U.S.C. § 1546(b)).

In *Hoffman Plastic,* the Supreme Court considered a challenge brought under the NLRA by an undocumented alien who was not lawfully entitled to be present in the United States and who had used false documentation to obtain employment in violation of IRCA provisions. 535 U.S. at 141. The Supreme Court held that federal immigration policy, as expressed in IRCA, precluded the NLRB from awarding backpay to the undocumented alien, despite the employer's violation of labor laws. *Id.* at 149, 151. The Supreme Court noted that the IRCA regime makes it "impossible for an undocumented alien to obtain employment in the United States without some party directly contravening explicit congressional policies" because "[e]ither the undocumented alien tenders fraudulent identification, which subverts the cornerstone of IRCA's enforcement mechanism, or the employer knowingly hires the

5

undocumented alien in direct contradiction of its IRCA obligations." *Id.* at 149. To thus allow an undocumented alien to recover backpay, the Court concluded, "for years of work not performed, for wages that could not lawfully have been earned, and for a job obtained in the first instance by criminal fraud," *id.*, would "encourage the successful evasion of apprehension by immigration authorities, condone prior violations of the immigration laws, and encourage future violations," *id.* at 151. *See also Del Rey Tortilleria, Inc. v. NLRB*, 976 F.2d 1115, 1122 (7th Cir. 1992) (holding pre-*Hoffman Plastic* that IRCA "clearly bars the Board from awarding backpay to undocumented aliens wrongfully discharged after IRCA's enactment").

Because state law governs substantive issues in a diversity action, *Gacek v. American Airlines, Inc.*, 614 F.3d 298, 301 (7th Cir. 2010), it is necessary in this case to determine whether an undocumented alien may recover future lost earnings under Illinois law. The Illinois Supreme Court has not answered this question. *See Fidelity Union Trust Co. v. Field*, 311 U.S. 169, 177 (1940) ("The highest state court is the final authority on state law."). In the absence of Illinois Supreme Court precedent, this court looks to decisions of the Illinois Appellate Court. *See id.* at 177-78; *see also Arnold v. Metro. Life Ins. Co.*, 970 F.2d 360, 361 (7th. Cir. 1992).

Wielgus points to *Economy Packing Co. v. Illinois Workers' Comp. Comm'n*, 387 Ill.App.3d 283 (1st Dist. 2008), to support his argument that Illinois law allows undocumented aliens to recover future lost earnings. Although that case is instructive, it does

not definitively answer the question presented here.  There, the Illinois Appellate Court was answering the question of whether an undocumented alien is precluded from obtaining workers' compensation benefits, not future lost earnings.  The court recognized undocumented aliens as "employees" within the definition of the Illinois Workers' Compensation Act, 820 ILCS 305/1 (2002), and concluded that the injured employee in that case was entitled to receive workers' compensation benefits.  *Economy Packing*, 387 Ill.App.3d at 289.  Addressing the impact of *Hoffman Plastic* on this question, the court held that workers' compensation benefits were "fundamentally distinct" from the backpay at issue in *Hoffman Plastic*, noting that unlike the undocumented alien there, the claimant seeking workers' compensation benefits had "suffered a loss unrelated to her violation of the IRCA." *Id.* at 291.  The court went on to say:

> Although the IRCA prevents the claimant from legally working in the United States, she would still be able to work elsewhere had she not sustained a work-related injury.  As a consequence, the award of [permanent total disability] benefits to the claimant is separate and distinct from any continuing violation of the IRCA and, therefore, does not conflict with federal immigration policy.

*Id.*  While noting that the primary purpose of IRCA is to "diminish the employment 'magnet that attracts aliens here illegally,'" the court expressed its disbelief that "eligibility for workers' compensation benefits in the event of a work-related accident [could] realistically be described as an incentive for undocumented aliens to unlawfully enter the United States." *Id.* (quoting H.R.Rep. No. 99-682(I), at 46 (1986), as *reprinted* in 1986 U.S.C.C.A.N. 5649, 5650).  According to the Illinois Appellate Court, precluding the recovery of workers'

7

compensation benefits would contravene IRCA's purposes by creating a financial incentive for employers to hire undocumented workers. *Id.* at 292. The court thus concluded that IRCA, neither expressly nor implicitly, preempts the awarding of workers' compensation benefits to undocumented aliens. *Id.*

But that the Illinois Appellate Court and courts in other jurisdictions have all similarly concluded that state law extends workers' compensation benefits to undocumented aliens, *see Economy Packing*, 387 Ill.App.3d at 293 (citing cases), does not answer the question presented here. The policy implications of awarding workers' compensation benefits are significantly different from those implicated by awarding damages in state tort actions. *See Zuniga v. Morris Material Handling, Inc.*, No. 10 C 696, 2011 WL 663136, at *4 (N.D. Ill. Feb. 14, 2011); *see also Veliz v. Rental Serv. Corp. USA, Inc.*, 313 F.Supp.2d 1317, 1336-37 (M.D. Fla. 2003) (distinguishing policy implications of awarding workers' compensation benefits from state common law tort system). Workers' compensation is a statutory remedy that imposes liability on employers for workplace injuries. *See Economy Packing*, 387 Ill.App.3d at 288. It acts as a form of insurance, providing for "liability without fault on the part of the employer in return for relief from the prospect of large damage claims based on common-law negligence." *Incandela v. Giannini*, 250 Ill.App.3d 23, 26-27 (2d Dist. 1993); *see also Sharp v. Gallagher*, 95 Ill.2d 322, 326 (1983).

By contrast, recovery of future earnings in a tort action is one manner, in addition to recovery for damages for pain and suffering and medical expenses, in which an injured

8

plaintiff may be made whole. *See McLane v. Russell*, 131 Ill.2d 509, 523-24 (1989); *see also Harris v. Peters*, 274 Ill.App.3d 206, 207 (1st Dist. 1995) ("The purpose of awarding compensatory damages is to make the injured party whole and restore him to the position he was in before the loss, but not to enable him to make a profit or windfall on the transaction."). It is not a type of insurance; nor is it a substitute for Illinois's tort system. *See Veliz*, 313 F.Supp.2d at 1337. In short, that Illinois has allowed undocumented aliens to recover workers' compensation does not answer the question of whether they may also recover future earnings in a state tort action. Accordingly, because Illinois courts have not definitively answered this question, the court must attempt to predict how the Illinois Supreme Court would answer it. *See Standard Mut. Ins. Co. v. Bailey*, 868 F.2d 893, 896 (7th Cir. 1989).

"When state law on a question is unclear . . . the best guess is that the state's highest court, should it ever be presented with the issue[ ], will line up with the majority of the states." *Vigortone AG Products, Inc. v. PM AG Products, Inc.*, 316 F.3d 641, 644 (7th Cir. 2002). But following *Hoffman Plastic*, courts have split on this issue, some concluding, in some form, that an undocumented alien is precluded from recovering in tort future lost United States wages.[3] *See, e.g., Martinez v. Freeman*, No. 06 C 50199, 2008 U.S. Dist.

---

[3] Wielgus claims that the "substantial national consensus" among courts addressing this issue is that *Hoffman Plastic* does not bar an undocumented alien from seeking lost future earnings. (R. 206, Pl.'s Mot. at 5.) But as detailed in this opinion, courts nationally are divided on this subject.

LEXIS 112290, at *7, *8 n.4 (N.D. Ill. Feb. 22, 2008) (holding that claimant is not entitled to recover any potential lost United States wages "because such future wages could only have been earned in violation of the federal immigration laws" but allowing claimant to recover damages based on loss of future earnings that could have been earned lawfully, such as earnings from native county); *Veliz*, 313 F.Supp.2d at 1337 ("[P]ermitting an award predicated on wages that could not lawfully have been earned, and on a job obtained by utilizing fraudulent documents runs contrary to both the letter and spirit of the IRCA, whose salutory purpose it would simultaneously undermine." (internal quotation marks omitted)); *Hernandez-Cortez v. Hernandez*, No. Civ.A. 01-1241-JTM, 2003 WL 22519678, at *7 (D. Kan. Nov. 4, 2003) ("Hernandez-Cortez's status as an illegal alien precludes his recovery for lost income based on projected earnings in the United States.");[4] *Rosa v. Partners in*

---

[4] Wielgus contends that the statements in *Veliz* and *Hernandez-Cortez* were not holdings, but rather, merely dicta. In *Veliz*, although the district court granted the defendants summary judgment on all of the plaintiff's claims, the court noted that it was considering the defendants' argument regarding the plaintiff's claim for lost support and medical expenses as a matter of law. 313 F.Supp.2d at 1334 n.41, 1337 (granting summary judgment on claim for lost wages plaintiff would have earned as a United States employee). In *Hernandez-Cortez*, the plaintiffs brought a negligence action against multiple defendants seeking damages for personal injuries they sustained resulting from a motor vehicle accident involving two separate collisions. 2003 WL 22519678, at *1. The district court concluded that because the plaintiffs participated with the driver of their van in a common plan to transport unauthorized aliens, they were not "innocent passengers," and any negligence on the part of the driver of the van, therefore, was imputed to the plaintiffs. *Id.* at 5. This did not mean, however, that Hernandez-Cortez, an unauthorized alien, could not pursue his claims for injuries and related damages—though not lost income based on his projected earnings in the United States—against the defendants. *Id.* at 7. In rejecting Wielgus's contention that the statements in these cases are merely dicta, this court notes that no other court interpreting these cases has concluded, as Wielgus did, that the statements in question

*Progress, Inc.*, 152 N.H. 6, 13 (2005) ("an illegal alien may not recover lost United States earnings, because such earnings may be realized only if that illegal alien engages in unlawful employment").[5]  The *Hoffman Plastic* rationale has also been applied in cases alleging violations of the Fair Labor Standards Act.  *See Renteria v. Italia Foods, Inc.*, No. 02 C 495, 2003 WL 21995190, at *6 (N.D. Ill. Aug. 21, 2003) ("[T]he Supreme Court has made it clear that awarding back pay to undocumented aliens contravenes the policies embodied in [IRCA].  An award of front pay would be inappropriate for the same reason: front pay essentially assumes that the worker will continue to work for the employer in the future, which is against the law for an undocumented alien.").

Other courts have reached the opposite conclusion, holding that an undocumented alien's immigration status is not a per se bar to the recovery of lost future earnings in a tort case.  *See, e.g.*, *Madeira v. Affordable Housing Foundation, Inc.*, 469 F.3d 219, 228, 249 (2d Cir. 2006) (holding where employer, not undocumented alien, violated IRCA by arranging employment and where jury instructed to consider worker's removability in assessing damages, New York law did not conflict with IRCA policy in allowing recovery "for some measure of lost earnings at United States pay rates"); *Bordejo v. Exclusive Builders Inc.*,

_____

were dicta.  In any event, to the extent that the courts' statements were dicta, the reasoning behind them is instructive to analyzing the question present in this case.

[5]  The *Rosa* court provided an exception to this general rule, allowing for the recovery of lost United States wages in situations where the employer knew or should have known of the unauthorized alien's immigration status, "yet hired or continued to employ him nonetheless." 152 N.H. at 15.  This exception is not applicable here.

__F.Supp.2d__, 2011 WL 3667570, at *7 (M.D.Pa. 2011) (finding Pennsylvania's stance toward recovery of workers' compensation to be persuasive regarding recovery for personal injury and predicting that "the Pennsylvania Supreme Court would not preclude [Bordejo's] claims for lost earnings as a matter of law"); *Kalyta v. Versa Prods., Inc.*, No. 07-1333 (MLC), 2011 WL 996168, at *3 (D.N.J. March 17, 2011) (finding workers' compensation system comparable to personal injury and holding "[n]either IRCA nor New Jersey law prohibits lost wages damages for undocumented workers in the personal injury tort context"); *Tyson Foods, Inc. v. Guzman*, 116 S.W.3d 233, 244 (Tex. App. 2003) ("Texas law clearly allows for the recovery of damages for lost earning capacity, regardless of the claimant's citizenship or immigration status.").

This court predicts that the Illinois Supreme Court would apply the rationale of *Hoffman Plastic* and the Supreme Court's interpretation of the congressional objectives of IRCA to conclude that Wielgus's status as an undocumented alien precludes the recovery of damages based on the loss of future United States earnings—to which he would not lawfully be entitled because it would be based on compensation for future impermissible work—but does not preclude the recovery of damages for lost future earnings or earning capacity based on what he could legitimately earn in his country of lawful residence. Such an approach fairly balances the federal government's immigration policies, which, as expressed in IRCA and interpreted by *Hoffman Plastic*, is to discourage the employment of unauthorized aliens, with the objectives of a common law tort action, which is to ensure that a wronged plaintiff

12

is made whole following a defendant's tortious conduct. Awarding future earnings at a United States pay rate necessarily assumes an undocumented alien's future employment in the United States, which is impermissible under federal immigration law. *See Rosa*, 152 N.H. at 15 ("Allowing an illegal alien to recover lost United States earnings creates a paradoxical situation in which an illegal alien can lawfully become entitled to the value of United States wages only if he becomes physically unable to work."). But where a defendant's tortious conduct results in the diminishment of an unauthorized alien's future earning capacity, he should not be precluded from recovering the lost future earnings he could earn lawfully in his country of residence.

Having determined that the Illinois Supreme Court would reach this conclusion, this court must now resolve the question of whether IRCA preempts Illinois law allowing an undocumented alien to recover future earnings at the alien's residence country rate. Federal preemption of a state law occurs when that state law conflicts with a federal law. *Mason v. SmithKline Beecham Corp.*, 596 F.3d 387, 390 (7th Cir. 2010). The constitutional basis for federal preemption is found in the Supremacy Clause, which states that "the Laws of the United States . . . shall be the supreme Law of the Land [.]" U.S. Const. art. VI, cl. 2. Preemption comes in three forms: (1) express preemption, which occurs when Congress clearly declares its intent to preempt state law; (2) field preemption, which occurs when the "structure and purpose" of federal law demonstrates Congress's intent to preempt state law;

13

and (3) conflict preemption, which occurs when there is an actual conflict between state and federal law such that it is impossible to obey both. *See Mason*, 596 F.3d at 390.

IRCA does not explicitly preempt Illinois from allowing undocumented aliens to recover lost future earnings at country-of-residence wages. IRCA contains an express preemption clause stating that, "[t]he provisions of this section preempt any State or local law imposing civil or criminal sanctions (other than through licensing and similar laws) upon those who employ, or recruit or refer for a fee for employment, unauthorized aliens." 8 U.S.C. § 1324a(h)(2). The plain language of this section is directed at state or local laws that impose fines, civil or criminal, for hiring undocumented aliens. A state law allowing recovery for lost future earnings for tort injuries is not a "[s]tate or local law imposing civil or criminal sanctions" for the employment of "unauthorized aliens," *id.*, that would fall under IRCA's express preemption clause. *See Madeira*, 469 F.3d at 239. While a law imposing sanctions seeks to impose a penalty, *see Economy Packing*, 387 Ill.App.3d at 290 (citing Black's Law Dictionary 1341 (7th ed. 1999)), a regime allowing damages for tort injuries seeks to make a plaintiff whole, *see McLane*, 131 Ill.2d at 523-24. Accordingly, this court finds that IRCA does not explicitly preempt Illinois law allowing undocumented aliens to recover damages for lost earnings at residence country wage rates.

Nor has Congress implicitly preempted state law by entirely occupying the field of common law torts. Field preemption occurs "if federal law so thoroughly occupies a legislative field as to make reasonable the inference that Congress left no room for the States

14

to supplement it." *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992) (internal quotation marks omitted). It is well-established that immigration is a field in which the federal government is dominant. *See Hines v. Davidowitz*, 312 U.S. 52, 62 (1941) ("[T]he supremacy of the national power in the general field of foreign affairs, including power over immigration, naturalization and deportation, is made clear by the Constitution."). But IRCA, while addressing the hiring of undocumented aliens, provides nothing that would indicate congressional intent to supersede state tort laws allowing for recovery of lost future earnings. As such, IRCA does not implicitly preempt Illinois law allowing undocumented aliens to recover damages for lost earnings at residence country wage rates.

Finally, the court concludes that allowing Wielgus to recover lost future earnings at his residence country wage rates does not so conflict with IRCA policy warranting an inference of preemption. Conflict preemption arises when it is either physically impossible to comply with both federal and state law, or when state law stands as an obstacle to the accomplishment of congressional objectives. *See Time Warner Cable v. Doyle*, 66 F.3d 867, 875 (7th Cir. 1995). As discussed above, while the *Hoffman Plastic* Court noted that IRCA "forcefully made combating the employment of illegal aliens central to [t]he policy of immigration law," 535 U.S. at 147 (internal quotation marks omitted), there is no indication in IRCA—and the defendants have identified none—that Congress intended to deprive undocumented aliens of their right to sue for personal injuries in state courts or to preclude them from recovering damages for lost wages calculated at a rate at which the unauthorized

15

alien would lawfully be entitled to earn them. Nor would allowing such recovery make it impossible to enforce federal immigration policy or stand as an obstacle to the accomplishment of that policy. It cannot be said that allowing the recovery of lost future earnings calculated at an unauthorized alien's residence country's wage rate would create a significant financial incentive for an employer to hire an undocumented alien or for an unauthorized alien to unlawfully enter the United States.

Such a conclusion is not inconsistent with *Hoffman Plastic*. *Hoffman Plastic* did not purport to preclude an unauthorized alien from recovering earnings where a workplace-related injury has impeded the alien's ability to earn wages lawfully outside the United States. The *Hoffman Plastic* Court was concerned with awarding backpay "for years of work not performed, for wages that could not *lawfully* have been earned, and for a job obtained in the first instance by criminal fraud." 535 U.S. at 149 (emphasis added). While IRCA does not make it a crime for an unauthorized alien to work without proper documentation, the presence of an alien in this country without authorization is, of course, impermissible under federal law. That is the reason why Wielgus cannot recover any lost United States wages. That said, common law duties owed to a worker-employee are unrelated to, and do not depend on, the worker's compliance with federal immigration laws. Ultimately, workplace-related injuries reduce or eliminate a plaintiff's ability to work not only in the United States, but anywhere that he might otherwise engage in lawful employment. Allowing Wielgus to recover lost future earnings at his residence country rates would not stand as an obstacle to

16

fulfilling congressional immigration policy as interpreted in *Hoffman Plastic*. Accordingly, the court concludes that allowing an unauthorized alien to recover these types of damages does not conflict with the policies promoted by IRCA.

Having concluded that Wielgus is entitled to seek lost future earnings at his residence country rates, the court denies the defendants' request to bar him from introducing any evidence of lost future earnings at trial. (R. 199, Defs.' Mot. ¶ 9.) The defendants correctly state in their response brief (R. 234 at 13), that Wielgus cannot recover damages for lost future earnings or lost future earnings capacity based on speculative evidence. *See Saad v. Shimano American Corp.*, No. 98 C 1204, 2000 WL 1036253, at *24-25 (N.D. Ill. July 24, 2000) (citing *LaFever v. Kemlite Co.*, 185 Ill.2d 380, 407 (1998) ("[w]hile only 'some evidence' is needed to warrant an instruction, inherently that evidence must be reliable and grounded in more than mere possibilities"); *Christou v. Arlington Park–Washington Park Race Tracks Corp.*, 104 Ill.App.3d 257, 260 (1st Dist.1982) ("[t]estimony as to loss of earnings which is merely speculative, remote or uncertain is improper")). And because Wielgus has failed to identify any evidence of lost income outside the United States during discovery, the defendants argue that Wielgus must be barred from recovering any economic damages. (R. 199, Defs.' Mot. ¶ 9.) If the court accepted the defendants' argument in the context of a motion in limine here, the court would necessarily have to reach the conclusion that Wielgus is *not* entitled to any economic damages in this case. The court is not willing to do so at this time.

17

Ultimately the defendants' objective is to eliminate the issue of economic damages from the jury's consideration. But in Illinois, "[t]he quantum of proof necessary to prevail on a claim is different . . . from the measure of evidence needed merely to send an issue to the jury." *LaFever*, 185 Ill.2d at 407 (emphasis omitted). A plaintiff must present "some evidence probative of [the] claim" to merit an instruction to send an issue to the jury, and the trial court need not "be convinced of the persuasiveness of that evidence" before that evidence is admitted for consideration by the jury. *Id.* Moreover, expert testimony is not necessary to establish loss of future earning ability. *Id.* Rather, the plaintiff's testimony regarding the nature of his injuries and the expected permanent duration of these injuries can be sufficient to take "the question of impaired earning capacity to the jury." *Id.*

Given this liberal standard, it would be premature for the court to decide on the issue of whether Wielgus is entitled to have the jury consider the issue of lost income. The more prudent approach to take here is for the defendants to raise the issue of whether the jury should consider the issue of lost income or to move for a directed finding that Wielgus is not entitled to any lost future income after the close of Wielgus's case-in-chief. Wielgus must be mindful of his discovery responses in this case and that he will not be allowed to introduce any evidence not disclosed to the defendants if such evidence should have been disclosed during discovery.

18

## Conclusion

For the foregoing reasons, Wielgus's second motion in limine (R. 206) is granted in part and denied in part, and defendants' motion in limine number 32 (R. 199) is granted in part and denied in part.

ENTER:

_____
Young B. Kim
United States Magistrate Judge