UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JAROSLAW WIELGUS, | ) | |
| | ) | No. 08 CV 1597 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Magistrate Judge Young B. Kim |
| | ) | |
| RYOBI TECHNOLOGIES, INC., *et al.*, | ) | |
| | ) | July 23, 2012 |
| Defendants. | ) | |

**MEMORANDUM OPINION and ORDER**

In this diversity suit, Jaroslaw Wielgus brings claims of negligence, breach of implied warranty, and strict liability under Illinois law (R. 84), alleging that Ryobi Technologies, Inc., One World Technologies, Inc., and Home Depot, USA, Inc. (collectively, "the defendants"), are liable for hand injuries he sustained in March 2006 while using the Ryobi Model BTS10S tablesaw, a product that the defendants manufactured or sold and Wielgus contends was unreasonably dangerous when it left the defendants' control in 2005.[1] On March 6, 2012, the parties filed a total of 41 motions in limine. This court has been grappling with the voluminous submissions in batches, grouping the motions by subject matter and issuing opinions resolving a particular group at a time. (*See* R. 248, R. 251, R. 257, R. 259, R. 261.) In this sixth opinion, the court rules on the defendants' motions seeking to preclude the admission of evidence relating to changes in the tablesaw industry safety standards which

---

[1] The parties have consented to this court's jurisdiction. (R. 42); *see also* 28 U.S.C. § 636(c).

became effective after the manufacture of the BTS10S model, changes in the guard design of the saw that were implemented after Wielgus's accident, and post-accident discussions regarding the licensing of an alternative design technology. For the following reasons, defendants' motion in limine number 11 (R. 178) is denied, motion number 22 (R. 189) is granted in part and denied in part, and motion number 27 (R. 194) is denied without prejudice.

## Legal Standard

Included in the district court's inherent authority to manage trials is the broad discretion to rule on motions in limine. *Aldridge v. Forest River, Inc.*, 635 F.3d 870, 874-75 (7th Cir. 2011). The purpose of such motions is to perform a "gatekeeping function and permit[] the trial judge to eliminate from further consideration evidentiary submissions that clearly ought not to be presented to the jury because they clearly would be inadmissible for any purpose." *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997). The moving party bears the burden of demonstrating blanket inadmissibility. *See Mason v. City of Chicago*, 631 F.Supp.2d 1052, 1056 (N.D. Ill. 2009). Absent such a showing, evidentiary rulings should be deferred until trial, when decisions can be better informed by the context, foundation, and relevance of the contested evidence within the framework of the trial as a whole. *Anglin v. Sears, Roebuck & Co.*, 139 F.Supp.2d 914, 917 (N.D. Ill. 2001). "A pre-trial ruling denying a motion in limine does not automatically mean that all evidence contested in the motion will be admitted at trial," *Bruce v. City of Chicago*,

No. 09 CV 4837, 2011 WL 3471074, at *1 (N.D. Ill. July 29, 2011), for the court may revisit evidentiary rulings during trial as appropriate in its exercise of its discretion, *see Luce v. United States*, 469 U.S. 38, 41-42 (1984).

**Analysis**

I.  **Defendants' Motion in Limine No. 11 to Bar Reference to the Post-1994 Changes to the Underwriters Laboratory Safety Standards**

The defendants' motion number 11 is denied. In this motion, the defendants seek to preclude Wielgus from presenting evidence concerning the Underwriters Laboratory ("UL") post-1994 safety standards that became effective after the BTS10S tablesaw left the defendants' control in 2005. UL is an independent, not-for-profit safety testing organization that tests products and formulates safety standards which it then publishes. *See Ross v. Black & Decker, Inc.*, 977 F.2d 1178, 1184 (7th Cir. 1992); *see also* (R. 178, Defs.' Mot. at ¶ 3). At the time of Wielgus's March 26, 2005 accident (R. 1, Compl. ¶ 12), UL 987 (6th edition)—which was published in 1994—was in effect. Since then, UL 987 has undergone several revisions. On January 31, 2005, the 6th edition of UL 987 was amended to require an independent riving knife, but this modification did not become effective until January 31, 2010. On November 5, 2007, UL 987 (then the 7th edition) was revised to introduce the use of a modular safety system that included the riving knife, barrier guards, and kickback pawls (referred to as a "new-style guard"); this modification also did not become effective until January 31, 2010. The defendants seek to preclude Wielgus from introducing evidence of these changes at trial.

3

Under both federal and Illinois law, evidence of a defendant's compliance with an accepted safety standard is relevant, but not a conclusive defense to a claim that the product is unreasonably dangerous. *Ross*, 977 F.2d at 1184; *see also Schwartz v. American Honda Motor Co., Inc.*, 710 F.2d 378, 383 (7th Cir. 1983); *Ruffiner v. Material Serv. Corp.*, 116 Ill.2d 53, 57 (1987) (noting that "evidence of standards may be relevant and admissible even though the standards have not been imposed by statute or promulgated by a regulatory body and therefore do not have the force of law"). Thus, in a products liability action, "[safety] standards may be relevant in determining whether or not the condition of the product is unreasonably dangerous." *Ross*, 977 F.3d at 1184. Under Illinois law, to be admissible, standards must be relevant "in terms of both time and conduct involved." *Murphy v. Messerschmidt*, 68 Ill.2d 79, 84 (1977).

The defendants do not dispute that the modifications to the guarding system reflected by the newly revised UL 987 safety standards were technologically feasible at the time of Wielgus's accident. (R. 178, Defs.' Mot. at ¶¶ 12, 18.) In other words, the defendants agree that the changes accounted for by the UL standards could have been incorporated onto their tablesaws at the time that the BTS10S model that injured Wielgus left their control in June 2005 and injured Wielgus in March 2006. But, relying on several Illinois cases, the defendants contend that the change to the UL safety standard should not be admitted into evidence because it became effective after the tablesaw at issue left the defendants' control and is therefore not relevant in terms of time.

4

The Seventh Circuit's decision in *Ross v. Black & Decker*, 977 F.2d 1178, 1184 (7th Cir. 1992), is instructive. There, the Seventh Circuit concluded that the district court did not abuse its discretion in admitting the 1982 UL safety standard as evidence of whether a power saw was unreasonably dangerous when manufactured, even though that standard became effective after the manufacture of the saw at issue. *Id.* Distinguishing *Murphy v. Messerschmidt*, 68 Ill.2d 79 (1977)—the same case on which the present defendants primarily rely—the Seventh Circuit concluded that in a products liability case where the focus is on the unreasonable dangerousness of a product, subsequent safety standards may be relevant to the issue of unreasonable dangerousness. *Ross*, 977 F.2d at 1184. "The fact that the standards were promulgated subsequent to the manufacture goes to the weight and not to admissibility." *Id.* (internal quotation marks omitted). That reasoning is applicable in this case.

The defendants attempt to distinguish *Ross* by arguing that the defendants in *Ross* disputed feasibility whereas here, they do not. This argument is based on the defendants' assumption that the change in the UL safety standards is properly characterized as a subsequent remedial measure under Federal Rule of Evidence 407. Under Rule 407, "[w]hen measures are taken that would have made an earlier injury or harm less likely to occur," evidence of those measures is not admissible to prove negligence, culpable conduct, a defect in a product or its design, or a need for a warning or instruction. Fed. R. Evid. 407. "But the court may admit this evidence for another purpose, such as impeachment or—if

5

disputed—proving ownership, control, or the feasibility of precautionary measures." *Id*. Thus, evidence of post-manufacture remedial measures are inadmissible to prove negligence or a design defect but may be admissible to demonstrate the feasibility of those measures, if disputed. Fed. R. Evid. 407; *Ross*, 977 F.2d at 1184-85. According to the defendants, their concession regarding the technological feasibility of the post-1994 UL standard changes renders them inadmissible as subsequent remedial measures under Rule 407.

The court is not convinced that the change in the UL industry standard at issue in this case is a subsequent remedial measure contemplated by Rule 407. Here, the change was announced in January 2005, prior to the tablesaw's manufacture in June 2005. Even though the change became effective after the saw's manufacture, the change was announced prior to it. Given that timing, the change to UL 987 is not properly characterized as a subsequent remedial measure. And *Ross* did not hold to the contrary. Instead, *Ross* concluded that the announced change by the UL was relevant to whether the saw was unreasonably dangerous. 977 F.2d at 1184. Indeed, such a change speaks to the dispute between the parties regarding the technological and commercial feasibility of an alternative design. It seems unlikely that the UL would promulgate a safety standard for a consumer product that was neither technologically, nor commercially feasible. At the very least, the UL must have considered the technological or economic feasibility of a safety standard prior to announcing it.

The defendants attempt to distinguish *Ross* by arguing that their concession regarding the technological feasibility of either a riving knife or a modular blade guard makes the UL

6

standard change irrelevant. This argument fails for in *Ross*, the Seventh Circuit did not hold that a party could preclude the admission of a change in an industry safety standard by conceding the technological feasibility of an alternative design. 977 F.2d at 1184. The discussion to which the defendants cite in *Ross* regarding stipulating to feasibility arose in a different section of the *Ross* opinion, where the court was not dealing with the change in industry standards, but instead, with subsequent remedial measures squnder Rule 407. That analysis is simply not applicable here because the court has concluded that the change in the UL safety standard, which was announced prior to, but became effective after, the manufacture of the BTS10S tablesaw, cannot be considered a subsequent remedial measure under Rule 407.

In sum, because evidence of the post-1994 changes to the UL safety standards are relevant to technological and economic feasibility, they are admissible as evidence of whether the BTS10S tablesaw was unreasonably dangerous when it was manufactured. *Ross*, 977 F.2d at 1184 (citing *Jones v. Black & Decker Mfg. Co.*, 202 Ill.App.3d 401 (1st Dist. 1990); *Seward v. Griffin*, 116 Ill.App.3d 749 (3d Dist. 1983)). The court further adds that the defendants' concession regarding technological feasibility does not render the pronounced UL changes prejudicially cumulative of other evidence Wielgus seeks to present regarding the feasibility of alternative designs. *See Blue v. International Broth. of Elec. Workers Local Union*, 159 F.3d 579, 585 (7th Cir. 2012) (noting that the defendants'

concession regarding fact does not render fact prejudicially cumulative because plaintiff is entitled "to make her case with evidence of her own choosing").

## II. Defendants' Motion in Limine No. 22 to Bar Reference to the New-Style Guard That Was Implemented in 2010

The defendants' motion number 22 is granted in part and denied in part. In this motion, the defendants seek to preclude Wielgus from introducing evidence of any changes to the design of the blade guard that the defendants implemented after Wielgus's accident to show that the guard on the BTS10S model that injured him was defective. The defendants acknowledge that in compliance with the revisions to UL 987, which became effective on January 31, 2010, the tablesaws currently manufactured and/or sold by them are equipped with the new-style guard. But they argue that the fact that they sell a tablesaw with the new-style guard is irrelevant under Rule 401, and alternatively, inadmissible as a subsequent remedial measure under Rule 407. Wielgus contends that evidence of the defendants' introduction of a saw incorporating the new-style guard is not barred by Rule 407 because the defendants' incorporation of it was not a voluntary action. Rather, it was a reaction to changes in the voluntary industry standards that now require the new-style guard.

As discussed above, under Rule 407, post-manufacture remedial measures are inadmissible to prove negligence, culpable conduct, a defect in a product or its design, or a need for a warning or instruction, but may be admissible where the manufacturer disputes the feasibility of those remedial measures. Fed. R. Evid. 407; *see also Ross*, 977 F.2d at 1184-

8

85.[2] The purpose of the rule is "to promote safety by removing the disincentive to take post-accident safety measures that would exist if the accident victim could introduce evidence of these measures on the issue of the defendant's liability." *Probus v. K-Mart, Inc.*, 794 F.2d 1207, 1210 (7th Cir. 1986); *see also Flaminio v. Honda Motor Co. Ltd.*, 733 F.2d 463, 471 (7th Cir. 1984) (noting that Rule 407 is based primarily "on a social policy of encouraging people to take, or at least not discouraging them from taking, steps in furtherance of added safety") (internal quotation marks omitted).

The court is not persuaded by Wielgus's argument that the evidence should not be barred under Rule 407 because the incorporation of a new-style guard by the defendants onto its tablesaws was not a voluntary action. According to Wielgus, the defendants' "introduction of a saw incorporating the new-style guard was not a voluntary action on [d]efendants' part but was rather a reaction to changes in the voluntary industry standards (which now require the new-style guard)." (R. 233, Pl.'s Resp. at 85.) Because the action was not voluntary, Wielgus contends, Rule 407 does not bar its admission. This argument is unpersuasive for two reasons. First, Wielgus agrees that compliance with the UL safety standards is voluntary, not mandatory (R. 233, Pl.'s Resp. at 64, 84-85), so Wielgus's

---

[2] Although Federal Rule of Evidence 407 applies in diversity cases, *see Flaminio v. Honda Motor Co. Ltd.*, 733 F.2d 463, 472 (7th Cir. 1984), the court notes that Illinois law also tracks the requirements of Rule 407, *see Herzog v. Lexington Twp.*, 167 Ill.2d 288, 301 (1995) (holding that evidence of subsequent remedial measures is not admissible to prove prior negligence but may be admissible to prove ownership, control, or feasibility of precautionary measures where disputed by defendant).

contention that the defendants' implementation of the new-style guard to comply with UL 987 was not voluntary is contradictory. Second, the cases cited by Wielgus to support his argument that non-voluntary subsequent remedial measures are exempt from the Rule 407 bar—*In re Yasmin and Yaz (Drospirenon) Marketing, Sales Practices and PMF Prod. Liability Litigation*, No. 09-md-2100, 2011 WL 6740391 (S.D. Ill. Dec. 22, 2011), and *Lorillard Tobacco Co. v. Elston Self Serv. Wholesale Groceries, Inc.*, No. 03 C 4753, 2009 WL 3462398 (N.D. Ill. Oct. 21, 2009)—are both distinguishable and inapposite. *In re Yasmin* involved corrective action taken following the receipt of a letter from the Food and Drug Administration, which essentially, as the *Yasmin* court went on to note, "is no more voluntary tha[n] a party paying a judgment without the judgment creditor pursuing post-judgment relief such as a garnishment." 2011 WL 6740391, at *8. As to *Lorillard*, it is unclear that the district court rejected the Rule 407 argument that Wielgus proposes here. Rather, noting that the defendants had failed to demonstrate that the action taken in that case was remedial within the meaning of Rule 407, the district court reserved ruling on any further evidentiary objections relating to the Rule 407 issue. 2009 WL 3462398, at *4-5. *Lorillard* is therefore not helpful to analyzing this question.

Other circuits—the Seventh Circuit has not weighed in on this question—have indicated that Rule 407 may not cover mandatory remedial actions. *See Pineda v. Ford Motor Co.*, 520 F.3d 237, 246 n.13 (3d Cir. 2008) ("We note that there is a possible exception to Rule 407 for remedial action mandated by superior governmental authority, such

10

as a regulatory agency, because the policy goal of encouraging *voluntary* improvements for greater public safety would not necessarily be furthered by the exclusion of such evidence.") (emphasis in original); *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1343 (5th Cir. 1978) (pointing out that because Rule 407 is based on policy of encouraging individuals to take steps toward added safety, "[i]nvoking this policy to justify exclusion here is particularly inappropriate since the estimate was prepared not out of a sense of social responsibility but because the remedial measure was to be required in any event by a superior authority").

Ultimately, this question need not be answered here for the court has already concluded that the defendants' implementation of the new-style blade guard was a voluntary action. But the court, nevertheless, finds that Rule 407 does not bar the evidence from admission because the issue of feasibility is disputed in this case and Rule 407's exception regarding feasibility applies. The defendants attempt to avoid the application of the remedial measures rule by arguing that they do not dispute the *technological* feasibility of the new-style guard. Rather, they merely dispute the *economic* feasibility of the technology. To prevail on his strict liability claim under Illinois law, Wielgus may prove that the BTS10S tablesaw was unreasonably dangerous under the risk-utility test theory, which asks Wielgus to show that the saw's design proximately caused his injury, leaving the defendants to "prove that on balance the benefits of the challenged design outweigh the risk of danger inherent in such designs." *See Mikolajczyk v. Ford Motor Co.*, 231 Ill.2d 516, 525 (2008) (internal quotation marks omitted). Wielgus is thus entitled to prove that the BTS10S tablesaw was

11

unreasonably dangerous by presenting "evidence of an alternative design that is economical, practical and effective." *Id.* at 525-28 (internal quotation marks omitted).[3]

Although the defendants argue that they are not contesting the technological feasibility of the new-style guard, it is clear they are contesting its economic feasibility. Accordingly, the issue of feasibility is, in fact, disputed, and Rule 407 does not bar admission of the defendants' incorporation of the new-style guard onto their tablesaws. *See also Schaffner v. Chicago & North Western Transp.* Co., 129 Ill.2d 1, 17 (1989) (interpreting *Dallas v. Granite City Steel Co.*, 64 Ill.App.2d 409, 423-24 (5th Dist. 1965), to allow evidence of post-accident remedial measure where defendant contested financial feasibility of remedy). The defendants are certainly free to make their arguments to the jury concerning why it was not economically feasible for them to incorporate a new-style guard after the UL standard change was announced but before the manufacture of the contested saw. For example, the defendants may argue that incorporating the modular blade guard prior to that date would have violated the then-existing UL standard, which, in turn, would have prevented them from selling the saws through retailers that require compliance with industry safety standards. Wielgus is then entitled to rebut this argument, and it is for the jury to determine which explanation it believes. The defendants cannot get around the application of the Rule 407

---

[3] The availability and feasibility of an alternate design is just one relevant factor by which the parties may calculate the risk-utility analysis, along with the open and obvious nature of the design defect and the design's conformance with industry standards or guidelines established by industry associations, legislation, or government regulations. *Calles v. Scripto-Tokai Corp.*, 224 Ill.2d 247, 263-64 (2007).

exception by conceding technological feasibility while still contesting the issue of economic feasibility.

Accordingly, the motion is denied in part, and Wielgus may introduce evidence of the implementation of the new-style guard to demonstrate technological and economic feasibility. Similar to the admission of the change in the UL industry safety standards, the defendants' concession regarding technological feasibility does not render the proposed evidence prejudicially cumulative of other evidence Wielgus seeks to present regarding the technological feasibility of alternative designs. *See Blue*, 159 F.3d at 585. The motion is granted as to the use of the evidence for any other purpose.

**III.    Defendants' Motion in Limine No. 27 To Bar Reference to Any Post-Occurrence Attempts by the Defendants to Negotiate a Licensing Agreement Regarding SawStop Technology**

The defendants' motion number 27 is denied without prejudice. In this motion, the defendants seek to preclude Wielgus from presenting evidence about any post-accident attempts by the defendants to negotiate a licensing agreement regarding SawStop technology.[4] The defendants concede that prior to the accident, they entered into licensing discussions with Dr. Gass, the inventor of SawStop technology, but no agreement was reached. (R. 194, Defs.' Mot. at ¶ 3.) The defendants argue, however, that any post-accident

---

[4] As discussed in this court's fifth opinion (R. 261), SawStop technology relies on the capacitance of the human body to detect contact between human flesh and a saw blade. When the flesh-detection device is triggered, it signals the saw to brake, resulting in blade contact causing only a scratch or minor cut, rather than a severe laceration or amputation.

13

licensing discussions are irrelevant, highly prejudicial, and barred under Rule 407. Wielgus counters that evidence of these negotiations is relevant to demonstrate that it was, in fact, feasible to incorporate SawStop onto the defendants' tablesaws, reasoning that the defendants would not negotiate a license for a technology that they believed was incapable of being implemented.

It is unclear to the court what evidence Wielgus possesses to demonstrate the existence of post-accident discussions to license SawStop. Wielgus acknowledges in his response that he has been unable to obtain any discovery from either Dr. Gass or the defendants about the existence or status of any post-occurrence licensing negotiations. (R. 233, Pl.'s Resp. at 93 n.14.) According to Wielgus, he "does not know, one way or the other, whether [d]efendants have engaged in post-occurrence negotiations with Dr. Gass or SawStop." (Id.) Pursuant to a confidentiality agreement—that Wielgus does not argue should be breached—Dr. Gass cannot reveal to Wielgus whether any negotiations have, in fact, taken place. That Wielgus—or presumably any other plaintiff—has been unable to obtain information regarding any post-2006 licensing negotiations the defendants have conducted with Dr. Gass demonstrates that this type of evidence has been deemed non-discoverable in related cases and may not even be relevant. *See* Fed. R. Civ. P. 26(b)(1). Given the ambiguity surrounding what evidence Wielgus has to present regarding post-accident licensing discussions, it would be premature for the court to decide on this issue at this time, and the court finds that it is best to defer it until trial. Accordingly, the defendants'

motion is denied without prejudice. However, before referencing any post-accident licensing discussions regarding the SawStop technology or introducing any evidence about it, Wielgus must inform the court of his intent to do so and the exact nature of such evidence so that the court may rule on the admissibility of such evidence outside the presence of the jury. The court notes that Wielgus must be mindful of his discovery responses in this case and that he will not be allowed to introduce any evidence not disclosed to the defendants if such evidence should have been disclosed during discovery.

## Conclusion

For the following reasons, defendants' motion in limine number 11 (R. 178) is denied, motion number 22 (R. 189) is granted in part and denied in part, and motion number 27 (R. 194) is denied without prejudice.

**ENTER:**

_____
**Young B. Kim**
**United States Magistrate Judge**