# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| JAROSLAW WIELGUS, | ) | |
| | ) | No. 08 CV 1597 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Magistrate Judge Young B. Kim |
| | ) | |
| RYOBI TECHNOLOGIES, INC., *et al.*, | ) | |
| | ) | August 21, 2012 |
| Defendants. | ) | |

## MEMORANDUM OPINION and ORDER

In this diversity suit, Jaroslaw Wielgus brings claims of negligence, breach of implied warranty, and strict liability under Illinois law (R. 84), alleging that Ryobi Technologies, Inc., One World Technologies, Inc., and Home Depot, USA, Inc. (collectively, "the defendants"), are liable for hand injuries he sustained in March 2006 while using the Ryobi Model BTS10S tablesaw, a product that the defendants manufactured or sold and Wielgus contends was unreasonably dangerous when it left the defendants' control in 2005.[1]  On March 6, 2012, the parties filed a total of 41 motions in limine.  This court has dealt with the voluminous submissions in sections, grouping the motions by subject matter and issuing opinions resolving a particular group at a time.  *See* (R. 248, 251, 257, 259, 261, 263).  In this seventh opinion, the court will resolve defendants' motion in limine numbers 1 and 23, both seeking to preclude evidence of other accidents involving tablesaws.  For the following

---

[1]  The parties have consented to this court's jurisdiction.  (R. 42); *see also* 28 U.S.C. § 636(c).

reasons, motion number 1 (R. 168) is denied, and motion number 23 (R. 190) is denied without prejudice.

## Legal Standard

Included in the district court's inherent authority to manage trials is the broad discretion to rule on motions in limine. *Aldridge v. Forest River, Inc.*, 635 F.3d 870, 874-75 (7th Cir. 2011). The purpose of such motions is to perform a "gatekeeping function and permit[] the trial judge to eliminate from further consideration evidentiary submissions that clearly ought not to be presented to the jury because they clearly would be inadmissible for any purpose." *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997). The moving party bears the burden of demonstrating blanket inadmissibility. *See Mason v. City of Chicago*, 631 F.Supp.2d 1052, 1056 (N.D. Ill. 2009). Absent such a showing, evidentiary rulings should be deferred until trial, where decisions can be better informed by the context, foundation, and relevance of the contested evidence within the framework of the trial as a whole. *Anglin v. Sears, Roebuck & Co.*, 139 F.Supp.2d 914, 917 (N.D. Ill. 2001). "A pre-trial ruling denying a motion in limine does not automatically mean that all evidence contested in the motion will be admitted at trial," *Bruce v. City of Chicago*, No. 09 CV 4837, 2011 WL 3471074, at *1 (N.D. Ill. July 29, 2011), for the court may revisit evidentiary rulings during trial as appropriate in its exercise of its discretion, *see Luce v. United States*, 469 U.S. 38, 41-42 (1984).

## Analysis

2

I.      **Defendants' Motion in Limine No. 1 to Bar Reference to, and the Admission of, Accident Data from the National Electronic Injury Surveillance System and the Consumer Product Safety Commission**

Defendants' motion number 1 is denied.  With this motion, the defendants seek to preclude Wielgus from introducing any testimony referring to, relying on, or derived from, the Consumer Product Safety Commission's ("CPSC") collection of saw-related accident data as part of its National Electronic Injury Surveillance System ("NEISS") program.  The defendants bring this motion in anticipation of Wielgus's efforts to introduce at trial the data collected by the NEISS database from representative hospitals and the resulting national estimates of injuries from saw-related accidents.

NEISS is a database that is compiled and maintained by CPSC.  (R. 168-1, Defs.' Mot., Ex. 1, CPSC's "The NEISS Sample" (June 2001) at 2.)  The database collects data about injuries associated with consumer products from the emergency rooms of approximately 100 designated hospitals.  (Id.)  To provide an accurate statistical sample representing the United States' population, the reporting hospitals are selected based on geographic location and the demographics of their service areas.  (Id. at 3-4.)  The surveillance data collected from the hospitals is used to make national estimates of the number of injuries associated with (but not necessarily caused by) specific consumer products.  (Id. at 1.)

When a patient is admitted to the emergency room of a NEISS hospital with an injury, an emergency room staff member—a clerk, nurse, or physician—collects information about how the injury occurred and enters that information into the patient's medical record.  (Id.;

R. 168-2, Defs.' Mot. Ex. 2a, CPSC's "NEISS: A Tool for Researchers" (March 2000) at 8.)

A "coder" from NEISS then reviews the patient's emergency room records and transmits the

pertinent data to NEISS, including the patient's age, gender, race, injury diagnosis, body

party injured, and the treatment received.  (R. 168-1 at 1-2; R. 168-2 at 8.)  The coder also

transmits a description of the incident and the product involved in the injury, providing as

much detail about the product as is included in the emergency room record. (R. 168-1 at 1;

R. 168-2 at 8.)

The defendants argue that the NEISS data and the resulting CPSC reports about the

number of saw-related injuries are hearsay, inadmissible to prove the truth of the matter

asserted, and are untrustworthy, irrelevant and unfairly prejudicial.  Wielgus counters that

the NEISS data is admissible to prove the truth of the matter asserted because it qualifies

under the Federal Rule of Evidence 803(8) public records hearsay exception.  Wielgus also

contends that the data is admissible for two valid non-hearsay purposes: (1) the data

demonstrates that the defendants had notice of the dangerousness of the BTS10S tablesaw

model; and (2) the data is a proper basis for the opinions given by Wielgus's experts under

Federal Rule of Evidence 703.  Wielgus further argues that the NEISS data is reliable and

not unfairly prejudicial when balanced against its relevance.

The defendants first contend that the NEISS data is hearsay, inadmissible to prove the

truth of the matter asserted because the data is composed of multiple layers of out-of-court

statements that Wielgus has not demonstrated is trustworthy.  Under Rule 803(8), a public

record is not excluded by the rule against hearsay in a civil case if it is a "record or statement

4

of a public office" that sets out "factual findings from a legally authorized investigation" and "neither the source of information nor other circumstances indicate a lack of trustworthiness." Fed. R. Evid. 803(8). The Consumer Product Safety Act charges CPSC with protecting the public "against unreasonable risks of injury associated with consumer products," 15 U.S.C. § 2051(b)(3), and developing "uniform safety standards for consumer products," 15 U.S.C. § 2051(b)(4). To accomplish these objectives, the Act requires CPSC to "maintain an Injury Information Clearinghouse to collect, investigate, analyze, and disseminate injury data, and information, relating to the causes and prevention of death, injury, and illness associated with consumer products." 15 U.S.C. § 2054(a)(1). CPSC complies with this directive through the NEISS database.

The defendants do not dispute that the reports from the NEISS database satisfy the requirements for a public record within the meaning of Rule 803(8). Rather, the dispute centers on whether the data collected by the NEISS system is trustworthy, a required element for admissibility under Rule 803(8)(B). Where the threshold requirements of Rule 803(8)(A)(iii) are met—the record constitutes a factual finding from a legally authorized investigation—trustworthiness is presumed, and the burden is on the party opposing admission to show a lack of trustworthiness. *See Klein v. Vanek*, 86 F.Supp.2d 812, 820 (N.D. Ill. 2000); *see also Abrams v. Van Kampen Funds, Inc.*, No. 01 CV 7538, 2005 WL 88973, at *18 (N.D. Ill. Jan. 13, 2005). In evaluating whether the sources of information or other circumstances indicate a lack of trustworthiness, this court looks to, among other factors, the timeliness of the investigation, the special skill or experience of the investigator,

whether a hearing was held, and possible bias when reports are prepared with a view to possible litigation. Fed. R. Evid. 803, 1972 Advisory Committee Notes; *see also Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 167 n.11 (1988); *Klein*, 86 F.Supp.2d at 820.

The defendants do not offer any argument as to why any of these factors demonstrate that the NEISS data is untrustworthy. Instead, they claim that the NEISS database is inherently unreliable because it is created from compiling multiple layers of out-of-court hearsay statements. The defendants argue that the database—on which the CPSC reports are based—relies on statements made by patients to an emergency room staff member who then enters the information into the medical file, which is then interpreted by a coder, who then transmits the pertinent information to NEISS. Such a process, according to the defendants, makes the NEISS data and CPSC's national estimates of saw-related injuries extrapolated therefrom unreliable.

That a public document contains multiple levels of hearsay does not make it automatically unreliable and therefore untrustworthy for purposes of Rule 803(8). The Seventh Circuit confirmed this proposition in *In the Matter of Oil Spill by Amoco Cadiz Off the Coast of France*, 954 F.2d 1279, 1308 (7th Cir. 1992), holding that "[n]othing in either the text or history of Rule 803(8) supports an approach that would make the rule essentially useless—for the bureaucrat who fills out a governmental form usually incorporates information furnished by others." Indeed, "Rule 803(8) is a multi-level exception, in the footsteps of its common law precursors." *Id.* In other words, when preparing reports based on statistics, government agencies, like CPSC, necessarily must gather data from other

6

sources, among them the NEISS database, since the occurrences that form the basis for the statistics did not occur firsthand to the agency preparing the report.[2] Inherent in Rule 803(8) is the presumption that public officials conducting a legally authorized investigation "performed their duties properly, without any motive or interest on their part other than to prepare an accurate report." *Huff v. State of Illinois*, No. 97 CV 4568, 2003 WL 168630, at *5 (N.D. Ill. Jan. 23, 2003). What's more, "that an unbiased investigator took statements from arguably biased witnesses is not a basis for excluding the report, because absent evidence to the contrary, the investigator is presumed to have sufficient competence and impartiality to weigh such evidence properly." *Id.*

Pertinent to the question of whether the NEISS data is unreliable is whether it is regularly and reasonably relied on by experts in the field. The defendants do not dispute that the NEISS data is regularly relied upon by other government agencies and experts in the field of consumer product safety.[3] Nor could they. *See* (R. 168-2, Defs.' Mot., Ex. 2a at 2) ("NEISS data are available to all and are typically used by other agencies of the Government,

---

[2] The defendants' comparison to investigative accident reports produced by CPSC, which are discussed in the cases on which they rely, is unavailing in light of the holding in *Amoco Cadiz*. These cases—*McKinnon v. Skil Corp.*, 638 F.2d 270, 278 (1st Cir. 1981), *Campos v. MTD Prodcs., Inc.*, No. 07 CV 00029, 2009 WL 2252257, at *7 (M.D. Tenn. July 24, 2009), and *Knotts v. Black & Decker, Inc.*, 204 F.Supp.2d 1029, 1041 (N.D. Ohio 2002)—were concerned with the "double hearsay" problem posed by CPSC reports. But *Amoco Cadiz* squarely rejects this concern when applied to the public records exception.

[3] The defendants later argue, however, that experts in the field of tablesaw design do not reasonably rely on the NEISS data to formulate opinions regarding the reasonableness of the design of the BTS10S tablesaw.

7

manufacturers, researchers, lawyers, and the general public. Over time NEISS has provided [CPSC] and some other Federal agencies with timely national estimates of product-related injuries."). Indeed, CPSC—the regulatory body charged with monitoring the safety of consumer products and, certainly, experts in the field of product safety—developed the NEISS database and uses it to accomplish its objectives under the Consumer Product Safety Act. *See Trull v. Volkswagen of America, Inc.*, 187 F.3d 88, 97 (1st Cir. 1999) (data on which article relied on by experts was collected and reported pursuant to legislative mandate by public agency—National Highway Traffic Safety Administration).

And they do not dispute that the NEISS data is considered and relied upon by the tablesaw industry. For instance, Underwriters Laboratory ("UL"), a not-for-profit safety testing organization that establishes voluntary safety standards for consumer products, relies on the NEISS data to determine whether changes should be made to the governing industry safety standards. *See* (R. 233-1, Ex. D at 88-90, 404-05, Dep. Tr. of John Stimitz) (testifying that the NEISS data is considered by UL when changing industry standards); Ex. E at 16-17, 22-23, 53-55, 72, Dep. Tr. of Michael Belcher). That experts in the field of product safety and the tablesaw industry rely on this data in assessing the safety of the product is certainly a factor weighing in favor of its trustworthiness.

The court further rejects the defendants' argument that CPSC reports based on the NEISS database is unreliable because the estimates of injuries related to tablesaws is a result of statistical extrapolation. Noting the "level of extrapolation is significant," the defendants take issue with the fact that from a "small number of reported accidents (795 in 2007 from

8

only 2% of the eligible hospitals)," CPSC arrived at its total national estimate of tablesaw injuries in 2007—34,833. (R. 168, Defs.' Mot. at 2, 6.) The defendants could make one of two arguments based on the statistical extrapolation of the data: (1) the method by which CPSC arrived at its total national estimate of injuries is unreliable; or (2) the extrapolation of national estimates from a subset of accident data is inherently unreliable. The first argument could have some merit to it if the defendants provided evidence demonstrating it to be true. But the defendants have not pointed to any evidence that the methodology used by CPSC is unreliable or not accepted by statisticians. Moreover, it should be noted that CPSC uses this method of extrapolation to arrive at its national estimates, which, in turn, are relied on by other governmental bodies and product manufacturers. The second argument presumes that any type of extrapolation is unreliable. That argument is unconvincing. Statistical analysis is inherently based on extrapolating estimates based on a subset of data. The defendants' argument that the NEISS data is unreliable simply because of the "significant" level of extrapolation, without any evidence to support such a theory, is an insufficient reason to exclude this evidence.

Ultimately, the underlying data providing the initial basis for the NEISS database is presumptively reliable unless the defendants set forth evidence demonstrating a lack of trustworthiness, a burden the defendants have not met. The evidence presented by Wielgus demonstrates that CPSC reports—and the NEISS data on which they are based—are sufficiently reliable to show the number of injuries related to tablesaw accidents. Accordingly, the data qualifies under the Rule 803(8) exception to the hearsay rule and may

be admissible, *see Jenks v. New Hampshire Motor Speedway*, No. 09-cv-205, 2012 WL 274348, at *3 (D.N.H. Jan. 31, 2012), provided that it is not subject to exclusion on other grounds, *Cooper v. Carl A. Nelson & Co.*, 211 F.3d 1008, 1018 (7th Cir. 2000). As discussed below, it is not—the court finds that the NEISS data and CPSC report are relevant to the issues in this case and that while their admission may have prejudicial effect, the probative value of that evidence is not so substantially outweighed by the danger of *unfair* prejudice as to exclude it under Federal Rule of Evidence 403. Moreover, as further explained below, even if the NEISS data and CPSC reports relying on it were not admissible on their own under Rule 803(8), they may still be admissible as a basis for Wielgus's non-excluded experts' opinions under Rule 703 to demonstrate that the defendants had notice of the dangerousness of the saws.

Wielgus also seeks to admit CPSC reports and injury data under Federal Rule of Evidence 703 because his experts relied on this data as a factual basis for their opinions. According to Wielgus, this data is therefore admissible on this independent basis.[4] Rule 703 permits an expert to rely on any information that "experts in the particular field would reasonably rely on . . . in forming an opinion." Fed. R. Evid. 703; *see also Nachtsheim v.*

---

[4] Wielgus's experts discuss how they considered the NEISS data and CPSC reports in their expert reports. (R. 172-4, Ex. 3, Gass Report at 5; R. 233-12, Ex. K, Darry Robert Holt's Report at 8-10, 17, 19-20.) Dr. Gass states in his report that when he invented SawStop, "there was a great need for safer tablesaws." (R. 172-4, Ex. 3 at 5.) As support for this assertion, Dr. Gass refers to CPSC's number of injuries involving tablesaws every year. (Id.) Holt notes in his report—in which he assesses the BTS10S model tablesaw guarding assembly—that in 1999, CPSC reported to the UL that there were 30,000 injuries per year from tablesaws. (R. 233-12, Ex. K at 8.)

*Beech Aircraft Corp.*, 847 F.2d 1261, 1270 (7th Cir. 1988). The information "need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect." Fed. R. Evid. 703.

The defendants contend that Wielgus cannot demonstrate that experts in the field of tablesaw design reasonably rely on the NEISS database and CPSC reports to form an opinion regarding the reasonableness of the design of the BTS10S tablesaw. To support this argument, the defendants point to CPSC's caution advisory, which states that the NEISS data and estimates "are based on injuries treated in hospital emergency rooms that patients say are *related* to products" and that when using the NEISS data, it is incorrect to say that "the injuries were *caused* by the product." (R. 168-10, Defs.' Mot., Ex. 4) (emphasis in original). Although CPSC clearly qualifies the NEISS data in this manner (R. 168-1, Defs.' Mot., Ex. 1, CPSC Document #3002)— which Wielgus does not dispute—that fact does not mean that experts in the field do not rely on this data to form opinions regarding the safety of saws.

Wielgus contends that the NEISS data is "widely regarded as reliable," pointing to the reliance on this data by CPSC, various other government agencies, the tablesaw industry, and the defendants. (R. 233, Pl.'s Resp. at 9-10.) As discussed above, the NEISS data is regularly considered and relied upon by other government agencies and experts in the field, including CPSC to monitor the safety of consumer products, the UL to make changes to the governing industry safety standards, and manufacturers in the industry, including the

11

defendants, to assess the safety of their products. *See* (R. 233; R. 236-1, Pl.'s Resp., Exs. G, H.) Because the NEISS database and CPSC reports are reasonably relied on by experts in the field of consumer product safety, they may properly be admissible under the first Rule 703 consideration. The defendants are free to bring out the fact that CPSC qualifies the NEISS data and its injury estimates when they cross-examine Wielgus's experts regarding their consideration of this data. And, as discussed below, the court does not see the need for the presentation of this evidence, and cross-examination about it, to be unduly emphasized or extensive. The court may allow the evidence to be referenced and discussed, but may limit the detail with which each party may delve into the information if the inquiry into the evidence becomes too prolonged.

The defendants again challenge the admissibility of the evidence under Rule 403, pointing to the unfair prejudicial impact the evidence would have. Although the evidence may be admissible as a basis for Wielgus's non-excluded experts' opinion testimony under Rule 703, "expert testimony is subject to Rule 403's general bar on the admission of unduly prejudicial evidence." *Nachtsheim*, 847 F.2d at 1270 (internal quotation marks omitted). But, as discussed below, the evidence is not so unfairly prejudicial when compared to its probative value as to warrant its complete exclusion under Rule 403.

Wielgus further seeks to admit the NEISS data and CPSC reports to establish that the defendants were on notice of the unreasonable dangerousness of power saws, that an "inordinate number of injures are being caused by power saws," and that "there were specific prior accidents involving its own power saws." (R. 233, Pl.'s Resp. at 13-14.) Evidence of

12

other accidents in products liability cases may be admitted not to prove the truth of the matter asserted, but for the non-hearsay purpose of showing notice to a defendant of the danger, showing existence of the danger, and showing the cause of the accident. *Ross v. Black & Decker, Inc.*, 977 F.2d 1178, 1185 (7th Cir. 1992). The defendants do not question this proposition. Indeed, they admit that CPSC reports "raised issues with the number of tablesaw injuries of which One World was aware." (R. 246, Defs.' Resp. at 4.)

Accordingly, the evidence may be admissible if offered to show that the defendants were aware of the potential risk before Wielgus's accident provided that it passes the test of Rule 403. This is where the defendants focus their argument against admissibility, claiming that "the introduction of the specific number of injuries before the jury in any given year is completely irrelevant, and any probative value it might have is greatly outweighed by unfair prejudice to the defendants." (Id.) To support this proposition, the defendants point to the number of incidents included in the NEISS data that did not involve blade contact; did not occur under substantially similar circumstances; and did not relate to the same model saw in question, instead involving different types of saws made by different manufacturers. (Id.)

Relevant evidence will be excluded under Rule 403 only if its probative value is "insignificant compared to its inflammatory nature so that the evidence *unfairly* prejudices the defendant." *United States v. Gorman*, 613 F.3d 711, 720-21 (7th Cir. 2010) (emphasis in original) (internal quotation marks omitted). Evidence of other accidents is relevant in a products liability case to show notice of the danger to the defendant, but before such evidence may be admitted, "the proponent must show that the other accidents occurred under

13

substantially similar circumstances." *Ross*, 977 F.2d at 1185 (quoting *Nachtsheim*, 847 F.2d at 1268) (emphasis omitted). While the requirement of similarity is heightened when prior accidents are being offered to show the existence of a dangerous condition or causation, that similarity requirement is "less strict" when the evidence sought to be admitted is used to show notice. *Nachtsheim*, 847 F.2d at 1269 n.9; *see also Dewick v. Maytag Corp.*, 324 F.Supp.2d 894, 904 (N.D. Ill. 2004) (stating that "foundational requirement of substantial similarity is relaxed . . . when prior accidents are introduced only to show that a defendant had notice of a condition and not as substantive evidence that the presence of the condition created liability").

The requirement of substantial similarity "does not equate to 'identical'—that is, properly comparable incidents need not be carbon copies . . . to warrant admissibility." *Dewick*, 324 F.Supp.2d at 904; *see also Mihailovich v. Laatsch*, 359 F.3d 892, 908 (7th Cir. 2004) ("In applying [the substantial similarity] standard, we have emphasized that 'substantially similar' does not mean 'identical,' and that the range between similar and identical is a matter to be addressed on cross-examination.") (internal quotation marks omitted)). "The particular defect or danger alleged by the plaintiff will serve to define the degree of commonality that there must be among the accidents in order for them to be considered substantially similar." *Mihailovich*, 359 F.3d at 908. "Looking to the established facts underlying both the plaintiff's accident and the other accidents [he] has proffered, the court must consider whether those facts reasonably support an inference that all of the accidents share a common cause—i.e., the danger that the plaintiff has alleged." *Id.* If the

14

facts support such an inference, "then the other accidents are admissible barring other factors suggesting that their admission will result in undue prejudice." *Id.*

Wielgus's theory in this products liability suit is that the tablesaw that injured him was unreasonably dangerous and that his injuries could have been avoided or substantially mitigated if the BTS10S model had been equipped with flesh-detection technology or an independent, rise-and-fall riving knife or splitter, that would have prevented kickbacks. (R. 233, Pl.'s Resp. at 3, 5.) Wielgus contends that for each blade-contact injury, the saws accounted for in the NEISS data all share a common danger—the saws were not equipped with flesh-detection technology and were equipped with the standard blade guard that was on the BTS10S. As the Seventh Circuit has reiterated, substantial similarity in this context does not require an exact replica of the circumstances of Wielgus's accident, nor of the product at issue. Accordingly, given Wielgus's theory of the case, the court agrees with him that these identified commonalities are sufficiently similar to pass muster under Rule of Evidence 402's relevance test.

The question then arises whether the NEISS data is unfairly prejudicial when compared to its probative value under Rule 403. Of course, the national estimates of injuries related to saws may be prejudicial evidence. The question, however, is whether these estimates are unfairly prejudicial in light of its probative value. *See Kelsay v. Consolidated Rail Corp.*, 749 F.2d 437, 443 (7th Cir. 1984) ("Of course, unfair prejudice as used in Rule 403 is not to be equated with testimony simply adverse to the opposing party. Virtually all evidence is prejudicial or it isn't material. The prejudice must be unfair.") (internal quotation

marks omitted). The defendants argue that if the court admits the accident data into evidence, they would be "overwhelmingly prejudiced [in] defending against claims of product defect" because a number of the accidents accounted for in the NEISS data involved saws other than the model BTS10S tablesaw. (R. 168, Defs.' Mot. at 11.) The defendants further add that a substantial amount of time would be required to address each accident in detail and contest the substantial similarity of each incident with evidence disputing it. Such a process, the defendants allege, would lead to delay and "involve an avalanche of collateral questions and competing arguments involving each alleged prior incident, which will result in unavoidable confusion and 'mini-trials' on collateral issues." (R. 168, Defs.' Mot. at 12.)

The court disagrees that a mini-trial would be necessary as to each and everyone of the accidents involved in the NEISS data. *See Mihailovich*, 359 F.3d at 914. The court may allow the admission of this evidence for limited purposes; and, the data, if admitted, need not be unduly emphasized. Once introduced for its limited purposes, the defendants are then free to point out to the jury during cross-examination any dissimilarities between the factual circumstances of the accidents and the products at issue. *Dewick*, 324 F.Supp.2d at 905. The defendants may also note any limits on the facts known about those accidents compiled in the NEISS data, without inquiry into this area from becoming unduly prolonged and without having to litigate who was at fault in each instance. *Mihailovich*, 359 F.3d at 914. Accordingly, the court finds that the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice.

In sum, the court finds that the NEISS data and CPSC reports based on it may be admissible under the Rule 803(8) public records exception to the hearsay rule. Alternatively, they may be admissible, not to prove the truth of the matter asserted, but as a basis for Wielgus's experts' opinions under Rule 703, and to show notice of the danger of power saws to the defendants. Further, the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice justifying its exclusion under Rule 403. One final note—although the court may allow the admission of the contested evidence for the particular reasons outlined in this opinion, the court recognizes that there are impermissible uses of the data. The defendants are free to object at trial if they perceive Wielgus to be using the data outside the scope of its permissible uses or overly highlighting it, and the jury will be properly instructed to consider it for its proper uses to avoid any undue weight that might be given to it.

## II. Defendants' Motion In Limine No. 23 to Bar Evidence of Other Accidents Not Substantially Similar to Wielgus's Accident

Defendants' motion number 23 is denied without prejudice. In this motion, the defendants seek to preclude Wielgus from introducing evidence of other accidents involving the BTS10S model tablesaw. The defendants note that during the course of discovery, they produced records of other accidents involving its tablesaws, but that of these accidents, only six involved BTS10S tablesaws that were made prior to the manufacture of the subject saw in June 2005 and involved tablesaws where users had operated them with the blade guard on at the time of their accidents. These six accident reports (R. 190, Defs.' Mot., Exs. B, C, D,

17

E, F, G, Accident Reports), the defendants contend, demonstrate that the accidents described therein are not substantially similar to Wielgus's accident, and therefore cannot be introduced as proof of a design defect or causation, or to show notice to the defendants of the defective condition of the subject saw.

Wielgus counters that the defendants' motion is premature since it requests exclusion of evidence without understanding how he intends to introduce such evidence and for what reason. Moreover, Wielgus contends that the accidents he intends to introduce are sufficiently similar to his accident because the cause of those accidents is the same as his theory on the cause of his injury—the BTS10S tablesaw, which lacked flesh detection technology and an independent, rise-and-fall riving knife, was unreasonably dangerous in situations involving a kickback.

The defendants attempt to invoke the substantial-similarity bar by arguing that to be admissible, the prior incidents must involve an individual who: (1) was operating a BTS10S model saw that was of a similar age and condition as the model Wielgus was using; (2) was operating a BTS10S model that had the blade guard properly attached at the time of the accident; (3) was attempting to make a rip cut using the fence; and (4) experienced a kickback during the accident. But, as discussed above, the requirement of "substantial similarity" does not require an exact replica of either the product at issue or the factual circumstances surrounding the accident. *See Mihailovich*, 359 F.3d at 908, 913 ("The standard for admission is not . . . identity or near identity."). The requirement is also relaxed when the evidence sought to be admitted is introduced to show a defendant's awareness of

18

a dangerous condition. *Nachtsheim*, 847 F.2d at 1269 n.9. Moreover, "[t]he particular defect or danger alleged by the plaintiff will serve to define the degree of commonality that there must be among the accidents in order for them to be considered substantially similar." *Mihailovich*, 359 F.3d at 908.

Here, as Wielgus alleges, the claimed-of danger is that it is reasonably foreseeable that an operator of a tablesaw—that did not have flesh-detection technology or an independent riving knife—could suffer hand injuries from operating that saw when a kickback occurs. *See Ross*, 977 F.2d at 1185. Wielgus further alleges that the flesh detection technology would "act to mitigate injury in every single accident that involved blade contact with flesh, without regard to how the contact occurred, the type of cut being made or the model of saw." (R. 233, Pl.'s Resp. at 88.)

The court agrees with Wielgus to a degree. Wielgus may be allowed to present the existence of other accident reports involving the BTS10S model to show that the defendants had notice of accident occurrences that could have been prevented with flesh-detection technology. Wielgus may also be allowed to present evidence of other accidents to demonstrate notice—not to demonstrate causation or a design defect—provided that he makes a sufficient showing that the other accidents—and it is unclear to the court what accidents Wielgus intends to introduce and how he will introduce them—are sufficiently similar to his accident. Wielgus, however, does not have carte blanche to introduce prior accidents involving any model tablesaw. He must limit the presentation of evidence of other accidents to those resulting from the use of the BTS10S model and from blade-contact

injuries with accidents involving kickbacks provided that Wielgus can present sufficient established facts, outside the presence of the jury, about the other accidents for him to make a useful comparison. *See Nachtsheim*, 847 F.2d at 1269 (citing cases).

The defendants are free to present evidence to, and highlight for, the jury any possible differences regarding, among other things, the age and condition of the tablesaw, the proper attachment of the blade guard, the type of cut attempted, the speed of the hand, and the angle of the fingers at the time of the accident. *See Mihailovich*, 359 F.3d at 908-09; *Dewick*, 324 F.Supp.2d at 904-05. These differences, however, go to the weight of the prior accidents evidence, not their admissibility. *Mihailovich*, 359 F.3d at 913. The defendants may also re-raise an objection at trial regarding the sufficiency of the facts surrounding the other prior accidents if it becomes evident that the facts surrounding the prior accident appear insufficient. Accordingly, the evidence of prior accidents may be admissible, not to demonstrate the alleged harmfulness of the tablesaw, but only to show that those accidents put the defendants on notice of a potential defect, that the likelihood of injury from that defect was foreseeable, and that flesh-detection technology would have mitigated or prevented his injury. *See Dewick*, 324 F.Supp.2d at 904-05.

**Conclusion**

For the foregoing reasons, defendants' motion in limine number 1 (R. 168) is denied,

and motion 23 (R. 190) is denied without prejudice.

**ENTER:**

_____
**Young B. Kim**
**United States Magistrate Judge**

21